# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## (*TRANSFERRED FROM THE WESTERN DISTRICT*)

MICHAEL PUNG,
    Plaintiff,

    v.

COUNTY OF ISABELLA, et al,
    Defendants

_____ /

Case No.: 20-cv-13113
Honorable Denise Page Hood

**MOTION**

| | |
|---|---|
| OUTSIDE LEGAL COUNSEL PLC<br>PHILIP L. ELLISON (P74117)<br>Attorney for Pung/Estate<br>PO Box 107<br>Hemlock, MI 48626<br>(989) 642-0055<br>(888) 398-7003 - fax<br>pellison@olcplc.com | CUMMINGS, MCCLOREY, DAVIS &<br>ACHO<br>ALLAN C. VANDER LAAN (P33893)<br>Counsel for Pickens/Isabella Co<br>2851 Charlevoix Dr, S.E., Ste 327<br>Grand Rapids, MI 49546<br>(616) 975-7470<br>avanderlaan@cmda-law.com<br><br>CHARLES A. LAWLER (P65164)<br>CLARK HILL PLC<br>Counsel for DePriest<br>212 E. Cesar E. Chavez Ave.<br>Lansing, Michigan 48906<br>(517) 318-3100<br>clawler@clarkhill.com |

---

## RENEWED MOTION FOR SUMMARY JUDGMENT AS TO COUNTS III, IV, AND V OF THE SECOND AMENDED COMPLAINT SOLELY AGAINST DEFENDANT PICKENS (OFFICIAL CAPACITY) AND DEFENDANT COUNTY OF ISABELLA

NOW COMES Plaintiff MICHAEL PUNG, as the personal

representative of the ESTATE OF TIMOTHY SCOTT PUNG, by counsel, and

renews his motion for summary judgment solely against Defendants STEVEN W. PICKENS, in his official capacity only, and COUNTY OF ISABELLA pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Counts III, IV, and V of the Second Amended Complaint. Granting this portion of the case at this time simplifies and streamlines the remainder of the case and remainder of the parties.

The pre-transfer judge (in the Western District) has already granted summary judgment on the liability portion of the Fifth Amendment claim. **Exhibit N, p. 10-11.** Plaintiff asserts there is no genuine issue of fact as to the amount of damages entitling Plaintiff to a judgment (and rendering the remaining claims against these Defendants duplicative for damages purposes). Because there is no just reason to continue to delay the entry of a judgment against Isabella County and its treasurer in his official capacity on a case that is already two years old, the Court should direct entry of a final judgment as to those parties on their claims pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The Court is also requested to direct Plaintiff to then file the motion for attorney fees and costs within 14 days of entry of the Rule 54(b) judgment. Concurrence was sought for the relief requested herein and that request was denied. LR 7.1(a).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**TABLE OF CONTENTS**

STATEMENT OF QUESTION(S) PRESENTED .......................................... ii

MOST RELEVANT AUTHORITY ................................................................iii

BRIEF IN SUPPORT ................................................................................ 1

FACTS.................................................................................................... 1

    I.    The County and Pickens violated the Fifth Amendment's Takings requirements by taking private equity without just compensation. ........................................................................... 9

        A.    Excess equity is taken property which requires just compensation. ................................................................. 9

        B.    Plaintiff is also entitled to *Knick* interest. ........................ 14

        C.    Plaintiff is also entitled to an award of attorney fees and costs. ....................................................................... 15

        D.    Conclusion.................................................................... 16

    II.    In the alternative, the County and Pickens have violated the Eighth Amendment's prohibition on excessive fines. ........ 16

        A.    Plaintiff is also entitled to an award of attorney fees and costs under this claim. ........................................... 20

        B.    Conclusion.................................................................... 20

RELIEF REQUESTED ............................................................................ 20

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*i*

## STATEMENT OF QUESTION(S) PRESENTED

**QUESTIONS:**

I.  Did Defendants effectuate a taking as to excess or surplus equity under the Fifth Amendment to the United States Constitution and its Michigan state law level equivalent?

II.  Did Defendants cause an excessive fine in violation of Eighth Amendment to the United States Constitution?

III.  Is Plaintiff entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

**ANSWER:**
Yes, on all these questions

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

# MOST RELEVANT AUTHORITY

Fifth Amendment

*Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019)

*Roberts v. N.Y. City*, 295 U.S. 264 (1935)

*Austin v. U.S.*, 509 U.S. 602 (1993)

*United States v. Bajakajian*, 524 U.S. 321 (1998)

*Timbs v. Indiana*, 139 S. Ct. 682 (2019)

42 U.S.C. § 1988

## BRIEF IN SUPPORT

### FACTS

In 1991, Timothy Pung purchased his home (i.e. improved real property) located at 3176 St. Andrews Drive, Union Township, in Isabella County (hereinafter the "Pung Property") for the tidy sum of $125,000.00. **Exhibit A**. Unexpectedly, fourteen years later, Timothy Pung died in 2004 leaving behind his wife, Donnamarie, and two children. **Exhibit P, ¶3.** Timothy's wife lived in the home until 2008. *Id., ¶6.* Immediately thereafter, Marc Pung, Timothy's son, lived at the Pung Property. *Id., ¶7.* Until the lawsuit was filed, it has always been occupied by Donnamarie and Marc continuously and held by the Timothy's probate estate (which remains unsettled and open due to this litigation).

At the time of Timothy's death, the Pung Property had long previously filed for and been granted a valid Principal Residence Exemption ("PRE")— the modern term for what was formerly known as the Michigan homestead property tax exemption. **Exhibits B**; see also **Exhibit D** (confirming the current PRE is formerly known as "homestead exemption").

In 2010, Defendant Patricia DePriest was the assessor for Union Township. For whatever reason, she decided to revoke the Pung Property's PRE status for the tax years 2007, 2008, and 2009. **Exhibit C, p. 1**. Doing

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

so increased the real property taxes on the Pung Property to an amount equal to the taken PRE.

This area of tax law is a bit peculiar, but Timothy's uncle and personal representative (executor) of his probate estate, Plaintiff Michael Pung ("PR Pung"), believed this to be in error and challenged Defendant DePriest's decision. Such challenges go before the Michigan Tax Tribunal, a specialized Michigan non-judicial tribunal presided over by an ALJ. The ALJ found on March 7, 2012 in favor of the Estate and declared the PRE credit has rightfully belonging to the Pung Property. **Exhibit C**. In other words, the slight tax increase from a lack of a PRE was never due and removing the PRE was in error. *Id.* ALJ Lasher never required a new PRE affidavit. *Id.* Defendant DePriest had lost. This apparently stung her hard and personally.

Following that decision by ALJ Lasher, Defendant DePriest *still* refused to return the PRE credit back to the property tax rolls of Union Township as to the Pung Property. This, again, directly resulted in a similar small, unpaid amount of property taxes equal to an amount consisting of the PRE credit amount.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Despite knowing this tax cannot possibly be imposed due to ALJ Lasher's decision, the County Treasurer, Defendant Steven Pickens[1], began tax foreclosure proceedings on the Pung Property for the "unpaid" amount of the PRE—which ALJ Lasher had already concluded was not owed. PR Pung again challenged that decision and won before the local circuit court in Mount Pleasant, Michigan. **Exhibit E**. Pickens appealed. The Court of Appeals affirmed. *Isabella Co Treasurer v Estate of Pung (In re Isabella Co Treasurer)*, 2015 Mich. App. LEXIS 227, at *1 (Ct App, Feb. 10, 2015) (**Exhibit F**). That apparently stung him hard too. The Michigan Court of Appeals concluded that the Tax Tribunal had "conclusively established" entitlement to the PRE credit and that under the doctrine of res judicata the Tax Tribunal's conclusion is conclusive as to the rights of the parties and their privies. *Id.* That would include the Estate, Pickens, and DePriest.

After the loss at the Court of Appeals, Defendant DePriest finally applied the PRE credit and the tax bills were issued. The amount PR Pung was informed was due was an amount with the PRE credit correctly applied. On December 31, 2012, the tax rolls closed in the normal course. PR Pung

---

[1] As to the portion involving the due process conspiracy claim, Pickens was sued in his personal capacity. As to the takings and excessive fines claims, Pickens was sued in his official capacity.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

paid this amount in full for the Estate. **Exhibit P, ¶10.**  It is at this time things went south.

MCL 211.7cc(6) provides that if Defendant DePriest, as an assessor, believes a property is not entitled to the PRE credit, she may remove it by 1.) notifying the owner and 2.) the Michigan Department of Treasury in writing of the reason for the denial. She must also advise the owner that the denial may be appealed to the Michigan Tax Tribunal within 35 days thereafter. It is Plaintiff's position that Defendant DePriest did _none_ of these things. **Exhibit P, ¶13.** Instead, after the tax rolls are closed on December 31, MCL 211.2(c)(2), Defendant DePriest again revoked the PRE credit without valid reason. Pickens was then involved. MCL 211.7cc(6) then mandates the tax roll can only be amended to reflect the denial and _the county treasurer_ shall within 30 days of the date of the denial prepare and submit a supplemental tax bill for any additional taxes, together with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest or penalty. The only person who could have done that was Defendant Pickens as county treasurer. He did not do

this either. Yet, both thusly _knew_ the tax was not owed, due to ALJ Lasher's decision and the affirmance by the Michigan Court of Appeals.[2]

The net but illegal result was what to appeared be yet another unpaid tax debt—yet was not actually owed due to the Tax Tribunal's and Court of Appeals' prior rulings. Pickens had to have known this as he was informed of the same throughout. **Exhibit P, ¶14.** Pickens, as the county treasurer of Isabella County, then begin foreclosure proceedings when _knowing_ that the outstanding tax liability of the Estate was, in fact, zero dollars due to ALJ Lasher's decision. He decided to feign that a debt[3] was owed to get back at the Estate for the enjoyment of his spurned group of governmental officials. PR Pung was never informed of the Improper Remaining Balance. None of the notices under MCL 211.7cc(6) were issued and the Estate (via PR Pung) was not given notice of the right to challenge the joint action and agreement of DePriest and Pickens in revoking the PRE after the closure of the tax rolls.

All the while matters were pending and being decided in favor of PR Pung (as outlined above), Pickens, on behalf of Isabella County,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[2] Defendant DePriest later claimed by sworn testimony in state court she was told to do this because of what she and Peter Kopke, then Chief Clerk of the Tax Tribunal, agreed to. **Exhibit G, p. 49.** It is unclear why Mr. Kopke would have involved himself with this at all, but Defendant DePriest testified that he was. _Id_. Again, such action has to include Defendant Pickens given that only he could have been the one to change tax rolls after December 31, 2012.

[3] This balance due on paper (but not actually owed) is referred to as the "Improper Remaining Balance."

commenced tax foreclosure proceedings against the Pung Property for not paying the Improper Remaining Balance, plus the interest and penalties generated (without notice). This amount (with interest and penalties) was only $2,241.93. **Exhibit H.** Pickens acted knowing that the debt was never legally owed and also never issuing the notice under MCL 211.2(c)(2). Michigan tax foreclosures are handled as an *in-rem* petition filed by Defendant Pickens with the local state circuit court. MCL 211.78k. Again, actual notice was not received by PR Pung that the Pung Property was being foreclosed upon for Improper Remaining Balance. **Exhibit P, ¶¶15-22.**

Michigan has some the strictest tax foreclosure standards. If a property is not redeemed before March 31 of the forfeiture year, there is nothing a Michigan court can do to set aside a judgment, <u>even when the judgment of foreclosure was erroneously entered</u>. See *In re Petition of Tuscola County Treasurer for Foreclosure*, 317 Mich App 688 (2016). Moreover, actual notice is not required to meet due process requirements on the *in-rem* foreclosure petitions in Michigan. Sadly, Pickens gave the only notice PR Pung received via a letter dated two days after March 31 (on April 2nd) but did not mail it until April 22. **Exhibit P, ¶21.** PR Pung took immediate legal steps to set aside the foreclosure again for a tax that was never owed. PR Pung and his counsel tried to get the forfeiture reversed via actions before the Isabella

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

County Trial Court. PR Pung was initially successful. **Exhibit I.** The County Treasurer appealed and the Michigan Court of Appeals reversed concluding that the Michigan Legislature divested the state circuit court of the authority to set aside a tax foreclosure for lack of notice. *In re Isabella Co Treasurer*, 2017 Mich. App. LEXIS 609; 2017 WL 1393854 (Ct App, Apr. 18, 2017) (**Exhibit J**). The Michigan Supreme Court refused to take action on the case. *Isabella Cty. Treasurer v. Estate of Pung (In re Isabella Cty. Treasurer)*, 501 Mich. 910; 902 N.W.2d 632 (2017) (**Exhibit K**). A final foreclosure judgment was entered on June 12, 2018. PR Pung filed suit on November 30, 2018. See **Compl, ECF No. 1**. Despite this lawsuit and the issues involved raising that the property was being improperly taken for no actual tax owed and the failure to pay just compensation, Pickens, on behalf of Isabella County, sold the Pung Property at tax auction and conveyed it to another on July 16, 2019. **Exhibit L**. The property is worth at least $194,400 by the government's own record admissions. **Exhibit M** (twice Final SEV[4]). But assuming that the tax

---

[4] Michigan's property tax assessors annually determine the market value of a piece of property. A property's "true cash value" is "the fair market value or the usual selling price of property." MCL 211.27. Courts "treat[] the concept of true cash value as being synonymous with fair market value." *Gardner v. Dep't of Treasury*, 498 Mich. 1, 8 (2015); *Detroit Lions, Inc. v. City of Dearborn*, 302 Mich. App 676, 696 (2013) (same). The "State Equalized Value" (or sometimes commonly known as simply "SEV") of a property is the term that means one half (1/2) of a property's True Cash Value. *Van Brouck & Associates, Inc v. Darmik, Inc.*, 329 F. Supp. 2d 924, 931 (E.D. Mich 2004); *Gardner*, 498 Mich at 7-8; see also http://www.michigan.gov/taxtrib/0,4677,7-187-25923-126336--,00.html. As the Michigan Supreme Court has confirmed, Michigan law directs that a "property's [S]tate

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

must be paid, Defendant Isabella County and Defendant Pickens nevertheless kept (i.e. took) the excess equity above the Improper Remaining Balance of $2,241.93—being $192,158.07.[5] PR Pung has expressly alleged that Defendant COUNTY OF ISABELLA and/or Defendant PICKENS (in his official capacity) has taken but not paid just compensation for property interests consisting of equity in the Pung Property from the ESTATE OF TIMOTHY SCOTT PUNG in the form of the entire value of the Pung Property and/or the value of the surplus equity in the Pung Property above or exceeding the Improper Remaining Balance, and was done for public use without the payment of just compensation. **Sec. Am. Compl., ECF No. 65, ¶¶101-102, 109-110.** Defendants STEVEN W. PICKENS, in his official capacity only, and COUNTY OF ISABELLA neither has or intends to pay just compensation until this lawsuit was started to compel the same.

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). If the nonmoving party fails to produce

---

[E]qualized [V]aluation shall not exceed 50% of the [T]rue [C]ash [V]alue of the property on the assessment date." *Gardner*, 498 Mich. at 7 fn10. This constitutes a reasonable way to compute damages.

[5] The Pung Property recently sold (pending) for $219,000. See **Exhibit O.**

enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Despite two years of litigation, Defendants have no known evidence. **Exhibits Q and R**.

**ARGUMENT / MEMORANDUM OF LAW**

**I.     The County and Pickens violated the Fifth Amendment's Takings requirements by taking private equity without just compensation.**

Plaintiff Pung asserts  there is no material question of fact that seizing and keeping/destroying the equity of $192,158.07 (the fair market value minus the alleged tax alleged to be owed) constitute a taking.[6] He asserted it violated the Fifth Amendment with a remedy provided via 42 U.S.C. § 1983 and *Knick v. Twp. of Scott*, 139 S. Ct. 216 (2019), and also concurrently violated Article X, Section 2 of the Michigan Constitution as an inverse condemnation.

**A.     Excess equity is taken property which requires just compensation.**

These claims premised on the concept of the taking of excess equity. The Fifth Amendment mandates "nor shall private property be taken for public use, without just compensation." US Const amend. V. It applies to the

---

[6] If this Court agrees, it greatly narrows the scope of damages for the remaining defendants in Counts I and II.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

States through the Fourteenth Amendment. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 122 (1978). The Takings Clause does not prohibit the taking of private property for public use but rather requires compensation when a taking occurs. *Alta Eldorado Partnership v. County of Santa Fe*, 634 F.3d 1170, 1174 (10th Cir. 2011). A taking occurs when a government official (1) takes private property (i.e. deprives the owner of all or most of its property interests) and (2) fails to compensate justly. *Prater v. City of Burnside, Ky*, 289 F.3d 417, 425 (6th Cir. 2002); *N.W. La. Fish & Games Pres Comm'n v. United States*, 446 F.3d 1285, 1289 (Fed Cir. 2006); *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 177-178 (1872). The failure to pay "just compensation" is generally what violates the Fifth Amendment. "Just compensation" means the full monetary equivalent of the property taken. *Almota Farmers Elevator & Whse Co. v. United States*, 409 U.S. 470, 473 (1973). The owner of taken property is to be put in the same position monetarily as it would have occupied if his property had not been taken. *Id.*, at 473-474.[7]

---

[7] The constitutional Takings prohibitions also bars governments from trying to avoid payment of just compensation by having state law simply changing the private character of property to public by mere legislative fiat or decree by statute. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 (1982). And "no matter how weighty the public purpose behind" the law may be, the Constitution "require[s] compensation." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

The case has already resulted in a finding that Defendants violated the Fifth Amendment with compensation due. **Exhibit N, p. 10-11.** As such and as the US Supreme Court confirms, compensation under the Fifth Amendment "must generally consist of [1.] the *total value* of the property when taken, [2.] plus interest from that time." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019). (emphasis added). "Total value" means the "full monetary equivalent" of the property taken. *Almota Farmers Elevator & Whse Co. v. U.S.*, 409 U.S 470, 473 (1973). The owner of taken property must be put "in as good position pecuniarily as he would have been if his property had not been taken." *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 586 (1923); *Almota*, 409 U.S. at 473; *United States v Reynolds*, 397 U.S. 14, 16 (1970); *United States v. Virginia Electric Co.*, 365 U.S. 624, 633 (1960). Stated another way, taking governments must pay "the full and perfect equivalent in money of the property taken." *United States v Miller*, 317 US 369, 373 (1943). The amount the taking government asserts is appropriate is not the de facto, proper, or required amount of just compensation. *United States v John J. Felin & Co*, 334 US 624 (1948). "The question is <u>what has the owner *lost*</u>, not <u>what has the taker *gained*</u>." *Roberts v. N.Y. City*, 295 U.S. 264, 282 (1935) (emphasis added).

Further, *Knick* has reconfirmed that one who has suffered a taking at the hands of a local government may *immediately* bring a claim in federal court under 42 U.S.C. § 1983[8] to obtain just compensation, plus interest. *Knick*, 139 S. Ct. at 2172. "The Fifth Amendment right to full compensation arises at the time of the taking, *regardless of post-taking remedies that may be available to the property owner*" under state law. *Id.* at 2170. A takings victim may bring constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available. *Id.* at 2172-2173.[9]

Here, the Plaintiff Estate (via PR Pung) was the owner of the Pung Property at the time of the taking. After having a falsely-asserted tax delinquency of approximately $2,200, Defendants Isabella County and/or its treasurer, seized complete ownership of a property worth vastly more, i.e. at

---

[8] Section 1983 creates a constitutional-based cause of action against any "person" acting under "color of state law" (like a statute) who causes deprivation of a federal right (like just compensation vis-à-vis the Fifth Amendment) is liable to the victim citizen. 42 U.S.C. § 1983; see also *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). A county is also a person for purposes of Section 1983 liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The failure to pay constitutionally required just compensation is generally what violates the Fifth Amendment.

[9] Recently, the Michigan Supreme Court ruled that under the Michigan state constitution, a former property owner is entitled to the surplus proceeds, i.e. the difference between the sale price and the tax owed. *Rafaeli LLC v. Oakland County*, __ Mich __; 2020 Mich. LEXIS 1219 (2020). But this Court has already granted summary judgment on the Fifth Amendment claim. **Exhibit N, p. 10-11.** By granting the fuller level damages awardable under the Fifth Amendment as required by *Roberts,* this lesser and inadequate state court remedy would be duplicative and renders Count V unneeded.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

least $194,400. By doing this, these Defendants have "taken" at least $192,158.07 in excess equity. Equity is property. *Crane v. Commissioner*, 331 U.S. 1, 7 (1947) ("'equity' is defined as 'the value of a property above the total of the liens.'"); see also *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 392 (6th Cir. 1986). Equity is a recognized common law property interest under state law. See e.g. *McCallister v. McCallister*, 300 N.W.2d 629, 633 (Mich. Ct. App. 1980) (treating "home equity" as "property" in divorce proceeding); *Verla v. Reverse Mortgage Solutions*, No. 320211, 2015 Mich App LEXIS 935 (Mich. Ct. App. May 7, 2015) (noting home equity is property that can be used as collateral for a loan). It is also divisible and severable. *Gappy v. Gappy*, No. 342861, 2019 WL 4553445 (Mich. App. Ct. Sept. 19, 2019) (court dividing home equity as a marital asset). Common law property rights are protected by the Takings Clause. *Bott v. Mich. Dep't of Nat. Res*., 415 Mich. 45, 83-87 (1982). Retaining excess and surplus equity is a taking. **Exhibit N, p. 10-11.**

In short, to "pay off" an outstanding pre-penalty debt (but ironically not actually owed) of less than $2,000, the Estates' remaining surplus/excess equity of $192,158.07 was taken by Isabella County and its treasurer with no means to obtain its return. No refund process was provided and no condemnation process was initiated by Defendants for the excess equity

amounts above the total tax-and-penalties delinquency of $2,241.93—which, again, was not even _actually_ owed.

This unconstitutionality should be no surprise. Over 135 years ago, the Supreme Court explained that withholding such a surplus, is an unconstitutional taking. _U.S. v. Lawton_, 110 U.S. 146 (1884). In _Lawton_, the US Government was advocating for the reinterpretation of a statute which would have allowed it to keep the excess equity under a similar real property taxing scheme. Our highest court rejected that argument explaining—

> To withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution and to deprive him of his property without due process of law, or to take his property for public use without just compensation. If he affirms the propriety of selling or taking more than enough of his land to pay the tax and penalty and interest and costs, and applies for the surplus money, he must receive at least that.

_Id._ at 150.   Because there is no material question of fact that just compensation is $192,158.07, Plaintiff is entitled to summary judgment as a matter of law and entry of a Rule 54(b) judgment.

### B.    Plaintiff is also entitled to _Knick_ interest.

Because a taking has occurred due to the lack of payment of just compensation at the time of the taking and failure of Defendants to commence any sort of condemnation proceedings, Plaintiff is also entitled to interest on the unpaid compensation. _Knick_, 139 S. Ct. at 2170 ("the compensation must generally consist of the total value of the property when

taken, plus interest from that time."). Defendants concede the taking occurred at the time of the foreclosure judgment, i.e. June 12, 2018. See **Exhibit R, ¶4** (date of taking is upon entry of foreclosure judgment) with **Exhibit J, p. 3** (noting date of entry of foreclosure judgment "on February 20, 2015"). A reasonable basis for calculating that interest is to use the interest rates for money judgments provided under state law. See MCL 600.6013. The calculation is attached as **Exhibit S**. The Court is requested to award this relief was well in the amount of $33,650.00.[10]

### C. Plaintiff is also entitled to an award of attorney fees and costs.

Upon this Court granting summary judgment in favor of Plaintiff, it is also entitled to an award of attorney fees and costs. 42 U.S.C. § 1988. "Whether plaintiffs may obtain attorney's fees" under Section 1988 "hinges on whether they prevailed." *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019). A party prevails when it "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Determination of prevailing-party status "is a legal question." *Binta B. ex rel. S.A. v. Gordon*,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[10] If this Court delays entry of an immediate judgment under Rule 54(b), then interest will continue to accumulate.

15

710 F.3d 608, 617-618 (6th Cir. 2013). "The question is simply whether the plaintiff has won on at least one claim." *Id.* at 620.

That is easily met here. The prior assigned judge has already ruled that Plaintiff is entitled to summary judgment as to liability under the Fifth Amendment and makes Plaintiff a prevailing party. This motion will cause the determination of the amount of the damages and cause the entry of a Rule 54(b) judgment. As such, the Court is requested to find Plaintiff is a prevailing party as to Defendant Isabella County and its treasurer in his official capacity and direct Plaintiff to file a motion to determine the amount within 14 days of entry of the Rule 54(b) judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure. See FRCP 54(d)(1), (d)(2)(A).

### D.    Conclusion

In conclusion, this Court is requested, pursuant to Rule 56, to grant summary judgment in favor of Plaintiff and against Defendants Isabella County and Pickens (in his official capacity) in the amount of $192,158.07 plus interest ($33,650.00) via *Knick*, and attorney fees and costs pursuant to 42 U.S.C. § 1988.

## II.    In the alternative, the County and Pickens have violated the Eighth Amendment's prohibition on excessive fines.

Should this Court rule in favor of Plaintiff as to Counts IV, the Eighth Amendment "excessive fines" claim made as Count III becomes duplicative

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

as overlapping damages. However, summary judgment is also sought in the alternative. This claim too is premised on the concept of the excess equity.

The Eighth Amendment provides that "excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Due Process Clause of the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines… applicable to the State." *Cooper Industries, Inc. v. Leatherman Group*, 532 U.S. 424, 433-434 (2001); *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019).

For many years, the Eighth Amendment was thought to be applicable only to crimes. However, the protections of "excessive fines clauses" have expanded contrary to the State's liability-limiting desires. Looking back to the Magna Carte, "a Free-man shall not be amerced for a small fault." *Timbs*, 139 S Ct at 687. "The protection against excessive fines has been a constant shield throughout Anglo-American history." *Id.* at 689. "Protection against excessive punitive economic sanctions secured by the Clause is… both fundamental to our scheme of ordered liberty and deeply rooted in this Nation's history and tradition." *Id.* at 689.

Eighth Amendment excessive fines protections are now being applied across many various aspects of modern society. E.g. *Pimentel v. City of Los*

17

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*Angeles*, 974 F.3d 917, 925 (9th Cir. 2020) (non-criminal parking tickets penalties). This is because the U.S. Supreme Court in *Austin v. U.S.* previously expanded the applicability of the constitutional-based "excessive fines" limitation to encompass "in kind punishments," i.e. *in-rem* civil forfeitures. *Austin* expressly places a constitutional limit on the government's power to exact, whether in cash or in kind, for "punishment." 509 US 602, 610 (1993). (emphasis added). The constitutional protection "cuts across the division between the civil and the criminal law" and is broadly meant "to limit the government's power *to punish.*" *Id.* at 609, 610 (emphasis added). To be unconstitutionally excessive, it must be "grossly disproportional." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998).

So, this begs two questions. First (and the easily answered one) is whether the acts complained of here as an *in-rem* civil forfeiture authorized under the GPTA results in punishment? The US Supreme Court left no doubt—a "statutory *in-rem* forfeiture" (which is what the GPTA uses[11]) "imposes punishment." *Austin,* 509 US at 614. So, after *Austin*, a statutory civil *in-rem* forfeiture is a fine within the meaning of the Excessive Fines Clause and thusly is subject to challenge on excessiveness grounds.

---

[11] See *Keweenaw Bay Outfitters v Dep't of Treasury*, 252 Mich App 95, 101 (2002) *Smith v Cliffs on the Bay Condominium Ass'n (After Remand)*, 245 Mich App 73, 75 (2001); MCL 211.78h(1).

The second question is whether punishment in the form of destroying the equity far in excess of the tax delinquency for the crime[12] of not paying one's taxes is unconstitutionally excessive, i.e. grossly disproportional? Plaintiff asserts it is. Per *Austin,* the "non-payment of property taxes" in an amount equal to the PRE (which was never owed in this case) is the wrong which imposed the loss of equity penalty. When that occurs, Defendant Pickens, acting as the treasurer for Isabella County, imposed a 40% interest penalty atop of the unpaid tax amount, and also adds two additional fees of $175.00 and $15.00. MCL 211.78a; MCL 211.78g(3) (collectively imposing >40% of interest plus certain fees) to reach the sum of $2,241.93 and then imposed an in-kind fine of an amount equal to the surplus or excess equity above the Improper Remaining Balance of $2,241.93—being $192,158.07. An additional in-kind civil forfeiture "fine" valued at $192,158.07 (being 85 times the not-due Improper Remaining Balance) is clearly and grossly excessive in violation of the Excessive Fines Clause of the Eighth Amendment. *Bajakajian*, 524 U.S. at 337 (a "fine" consisting of thirty-five (35) times the underlying offense is grossly excessive and violates the Eighth Amendment); see also *Timbs*, 139 S. Ct. at 690 ("We thus decline the State's invitation to reconsider our unanimous judgment in *Austin* that civil *in rem*

---

[12] Not paying one's taxes is likely a crime. MCL 211.119.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive.").

### A. Plaintiff is also entitled to an award of attorney fees and costs under this claim.

Upon this Court granting summary judgment in favor of Plaintiff as an unconstitutional excessive fine, it is also entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988. The Court is requested to award that relief but reserve decision on the amount with future submission pursuant to Rule 54 of the Federal Rules of Civil Procedure as similarly outlined above.

### B. Conclusion

In conclusion, this Court is requested, pursuant to Rule 56, to grant summary judgment in favor of Plaintiff and against Defendants Isabella County and Pickens (in his official capacity) in the amount of $192,158.07 plus attorney fees and costs pursuant to 42 U.S.C. § 1988 as an excessive fine under the Eighth Amendment.

### RELIEF REQUESTED

WHEREFORE, the Court is requested grant summary judgment in favor Plaintiff and against Defendants Isabella County and Pickens (in his official capacity) for the reasons outline above as an unconstitutional takings and/or an excessive fine. Upon such finding, the Court is requested to enter

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

an immediate judgment pursuant Rule 54(b) in the amount of $192,158.07 plus interest in the amount of $33,650.00, and direct Plaintiff to file the appropriate papers for attorney fees and costs within 14 days of entry of the Rule 54(b) judgment. As to the remaining claims as to the remaining parties, the Court is requested to allow them to continue normally in the discovery process.

Date: November 25, 2020

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
by PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on date stated below, I filed the foregoing document with the ECF/CM system which will serve an email copy of the same to all counsel of record (at their email address of record) on the date stated below.

Date: November 25, 2020

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
by PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Attorney for Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com