

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PUNG,
Personal Representative of the Estate
of Timothy Scott Pung,

       Plaintiff,

v.

PETER M. KOPKE, *et al.*,

       Defendants.
_____/

CASE NO. 1:18-CV-1334

HON. ROBERT J. JONKER

## OPINION AND ORDER

### INTRODUCTION

Plaintiff is the personal representative of the estate of his brother, Timothy Scott Pung, one asset of which was a homestead in Isabella County. Timothy Pung died in 2004. His wife survived him and continued living in the house until her death in 2008, immediately after which his son, Marc Pung, lived continuously in the house. In 2013, Isabella County began a tax foreclosure process against the property over what it said was about $2,200 in unpaid real estate taxes. That process culminated in a final foreclosure judgment in June 2018. The ensuing foreclosure sale yielded about $76,000. Plaintiff says there were never actually any unpaid taxes due at all, and that the County therefore never had a lawful basis to foreclose. But even if the foreclosure itself was proper, Plaintiff says that at a minimum the County had an obligation to account to Plaintiff for the excess sale proceeds above the amount necessary to satisfy the unpaid tax bill. This has spawned two sets of currently pending claims.

## FIRST SET OF CLAIMS

Plaintiff's first set of claims assert that he was unfairly targeted by the County Assessor (Defendant DePriest) and the County Treasurer (Defendant Pickens) because of an earlier round of tax litigation over the homestead exemption in which he prevailed. According to Plaintiff, this so angered defendants DePriest and Pickens that they conspired with a State ALJ (Defendant Kopke) to concoct a tax bill that unlawfully failed to apply the homestead exemption despite plaintiff's litigation win. To add insult to injury, Plaintiff says these defendants kept the inflated tax bill a secret from Plaintiff until after a critical deadline, lulling Plaintiff into believing he had paid the full tax properly assessed with credit for the homestead exemption.

Plaintiff says the scheme was retaliation for his success in the first round of homestead exemption litigation, a potential First Amendment violation; and contrary to the notice requirements built into Michigan law and inherent in due process, a potential violation of his Procedural Due Process rights. Plaintiff also says the fact pattern states a claim for a potential Class of One theory under the Equal Protection Clause as applied in *Willowbrook v. Olech*, 528 U.S. 562 (2000). According to Plaintiff, Defendants DePriest and Pickens were the main actors who hatched and executed the scheme together. But Plaintiff says this was "possibly" after a phone call with Defendant Kopke regarding how the homestead exemption works in Michigan, and so Plaintiff alleges Defendant Kopke, too, is potentially liable for the scheme as a co-conspirator.

## SECOND SET OF CLAIMS

Plaintiff's second set of claims asserts that the County itself unconstitutionally kept all the proceeds from the tax sale, rather than just the relatively small amount necessary to satisfy the balance of the tax bill allegedly still due. Plaintiff says this is either a Fifth and Fourteenth Amendment takings claim; or failing that for some reason, a violation of the Eight Amendment's

2

prohibition on excessive fines. The defendants' position throughout most of this litigation has been that Michigan law expressly permits a County to retain the full amount of any tax foreclosure proceeds, not just the amount necessary to satisfy an outstanding bill; and that this does not amount to an unconstitutional taking because the taxpayer forfeited any protected property interest as a result of the order of foreclosure that necessarily preceded the tax sale itself.

The Michigan Supreme Court recently rejected the defense view of Michigan tax foreclosure law in a unanimous decision holding that a municipality in Michigan is obligated to account for all sale proceeds above the amount necessary to satisfy any unpaid tax obligation. *Rafaeli LLC v. Oakland County*, Docket No. 156849, 2020 WL 4037642, ---Mich.--- (July 17, 2020).

## MOTIONS BEFORE THE COURT

Defendants now move to dismiss on multiple grounds. (ECF Nos. 72, 74, 77.) Plaintiff seeks partial summary judgment on its takings and excessive fines claims. (ECF No. 99.) The parties filed comprehensive briefs on these issues before the Michigan Supreme Court decision in *Rafaeli*, and supplemented their positions in light of *Rafaeli.* (ECF Nos. 15, 16, 22, 24, 28, 34-37, 39, 40, 44, 47, 48, 55, 56, 108, 110, 113-117.) The Court finds oral argument unnecessary to decide the motions. This is the decision of the Court.

## LEGAL STANDARDS AND DISCUSSION

1.  *Jurisdictional and Affirmative Defenses*

Defendants say some or all the claims are barred by a variety of jurisdictional barriers or prudential considerations. Defendants invoke the Tax Injunction Act, *Rooker-Feldman* doctrine, res judicata, collateral estoppel, and comity. The Court finds none of these provide a meritorious basis to dismiss at this point.

3

The *Rooker-Feldman* doctrine "prohibits the lower federal courts from reviewing appeals of state-court decisions" and "applies only to an exceedingly narrow set of cases." *VanderKodde v. Mary Jane M. Elliott*, P.C., 951 F.3d 397, 400 (6th Cir. 2020). Defendants argue that Plaintiff's case amounts to an appeal of a 2017 decision of the Michigan Court of Appeals rejecting Plaintiff's challenge to the judicial foreclosure on the property. (*See* ECF No. 15-2.) The Michigan Court of Appeals found that the process used in the foreclosure satisfied Plaintiff's constitutional right to due process. (*Id.*, PageID.90). In the case before this Court, Plaintiff is not seeking to unwind or otherwise challenge the foreclosure. Instead, Plaintiff claims that the Defendants unlawfully refused to apply the homestead exemption to the Property and deliberately failed to notify Plaintiff that the homestead exemption would not apply. This case simply does not fall within the "exceedingly narrow" scope of *Rooker-Feldman*. *See VanderKodde*, 951 F.3d at 409 (Sutton, J., concurring) ("Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop.").

Neither the Tax Injunction Act nor the comity doctrine bars Plaintiff's claims. The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA "creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority." *Pegross v. Oakland County Treasurer*, 492 F.App'x 380, 384 (6th Cir. Nov. 18, 2014). Courts have interpreted the TIA "broadly. . . to bar suits for declaratory relief, injunctive relief, as well as monetary relief when there is an adequate remedy in state court." *Hedgepeth v. Tennessee*, 215 F.3d 608, 612, n.4 (6th Cir. 2000). The comity doctrine, which is "more embracive than the TIA," restrains federal courts from entertaining claims in state taxation

4

cases that risk disrupting state tax administration. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). Neither the TIA nor the comity doctrine applies in the case before this Court. The administration of the state tax collection process is not an issue here. No one disputes that the tax was imposed and collected and that the property was foreclosed. Plaintiff is not seeking to unwind the foreclosure. The essence of Plaintiff's claims is that Defendants conspired to take the benefit of the homestead exemption away from him without notice or an opportunity for hearing; singled him out for this treatment; and retained excess proceeds from the foreclosure sale. None of these claims implicate the TIA or comity doctrine.

An earlier iteration of the *Rafaeli* case over which the U.S. District Court for the Eastern District of Michigan declined to exercise jurisdiction is distinguishable. *Rafaeli v. Wayne County*, No. 14-13958, 2015 WL 3522546 (E.D. Mich., June 4, 2015). In that case – a putative class action – the plaintiff was "[e]ssentially . . . seek[ing] to enjoin Oakland and Wayne Counties from proceeding with any future tax delinquency foreclosures, forfeitures and sales." *Id.* at *3. That is a direct attack on the county tax collection process, which is the heart of the TIA and comity doctrine. Moreover, that plaintiff was continuing to challenge the validity of the foreclosure sale itself and seeking to unwind it in a state court proceeding that was still pending. *Id.* Here, Plaintiff is mounting no attack on future collections, and is making no effort here, or elsewhere, to unwind the foreclosure. He is simply seeking money damages to compensate for dollars the County kept beyond the amount necessary to satisfy the tax it claimed was due.

Defendants' res judicata and collateral estoppel arguments likewise fail, at least on a motion to dismiss. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd.*

5

*of Educ.*, 465 U.S. 5, 81 (1984). "Federal courts routinely recognize the claim-preclusion effects of state-court judgments, both as to claims that arise under state law and as to federal statutory and constitutional claims. Issue preclusion is also recognized. . . ." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *FEDERAL PRACTICE & PROCEDURE* §4469 (3d ed. 2019).

The doctrine of res judicata exists to prevent multiple suits litigating the same claim. *Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386 (2004). Under Michigan law, the claim preclusion aspect of res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits; (2) both actions involve the same parties or their privies; and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan courts "take[] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising out of the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

Res judicata may or may not ultimately have bearing on some facts or claims, but it is not a basis supporting dismissal at this time. As already noted, Plaintiff is not challenging any aspect of the foreclosure process, which was the only subject of his earlier litigation. A foreclosure proceeding is an *in rem* proceeding against the property itself. Nor were the parties the same. In the earlier case, the Isabella County Treasurer was the sole named defendant. Defendants DePriest and Kopke were not parties to the suit, and Defendant Pickens was a defendant only in his official capacity as Isabella County Treasurer, the functional equivalent of the County. He was not sued in his personal capacity. Further factual development is needed to determine whether any factual issues pertinent here were fully litigated in the state, or whether any claims here were merged into any earlier state court judgment. With further factual development, it may emerge that earlier

6

decisions of fact or law necessary for the earlier judgment bear on this case. But any finding of issue or claim preclusion would be premature at this stage.

    2.    *Rule 12(b)(6) Regarding the First Set of Claims*

On the merits of the first set of claims, which the Court originally dismissed with leave to re-plead, the defense says the Second Amended Complaint still comes up short of stating a *Twombly*-plausible claim. Each defendant moves to dismiss.

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

As to the first set of claims, the Court continues to believe that Plaintiff's allegations come up short as to Defendant Kopke. The only count involving Defendant Kopke is Plaintiff's claim of a conspiracy to violate Plaintiff's right to procedural due process. Plaintiff bases his claim against Defendant Kopke on nothing more than an alleged telephone conversation with Defendant

7

DePriest "and possibly Defendant [Pickens]" during which, according to Plaintiff, Mr. Kopke directed Defendant DePriest to deny the homestead exemption. (ECF No. 65, PageID.513, 514.) Without any supporting factual allegations, Plaintiff alleges that Defendant DePriest removed the homestead exemption from the Property tax calculation "[b]y an agreement between [Defendants DePriest, Kopke, and Pickens] for the political benefit of Defendant [Pickens] due to his embarrassment and humiliation in losing the prior legal challenges." (*Id.*, PageID.513.)  Any alleged role Defendant Kopke may have played in the purported conspiracy is simply too skeletal and attenuated to support a claim against him.[1]

As to Defendants DePriest and Pickens, the Court is satisfied that for *Twombly* purposes, Plaintiff has articulated enough to survive Rule 12(b)(6) on his Procedural Due Process, and *Olech* Equal Protection theories. To state a claim for violation of procedural due process rights, a plaintiff must plausibly allege that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "The essential elements of due process are notice and an opportunity to be heard." *Silvernail v. County of Kent*, 385 F.3d 601 (6th Cir. 2004). Plaintiff alleges that Defendants DePriest and Pickens conspired to withhold the benefit of the homestead exemption to which a court had found him entitled, and to do so without notifying him or giving him an opportunity to be heard. That is enough to state a claim for conspiracy to violate procedural due process rights.

---

[1] Indeed, when the Court inquired at the Rule 16 proceeding about Plaintiff's theory of Mr. Kopke's involvement in the alleged conspiracy, Plaintiff's counsel acknowledged that "Kopke is difficult because I don't know either." (ECF No. 62, PageID.480.)

Under the Equal Protection Clause, "the states cannot make distinctions [that] . . . burden a fundamental right, target a suspect class, or intentionally treat one different[ly] from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005); see also *Olech*, 528 U.S. at 565 (2000). "Where, as here, a plaintiff alleges a violation of the third type, it is said to proceed on a 'class of one' theory." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F.3d App'x 826, 836 (6th Cir. 2009) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)); see also *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). Under this theory, a "plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). Plaintiff alleges Defendants DePriest and Pickens singled him out by withholding the benefit of the homestead exemption to which he was entitled, and that Defendants' animus arising out of Plaintiff's earlier litigation win motivated their actions. This is enough to state a claim for violation of Equal Protection rights under a class of one theory.[2]

### 3. Summary Judgment Regarding the Second Set of Claims

On the merits of the second set of claims, the defense recognizes that the Michigan Supreme Court decision has changed the liability landscape, but it says Plaintiff has over-estimated

---

[2] Plaintiff has not asserted a First Amendment retaliation claim directly, but the alleged fact pattern may support a retaliation theory. To prevail on a First Amendment retaliation claim, a plaintiff must show three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Plaintiff's earlier litigation was indisputably protected conduct; he alleges that he lost the benefit of the homestead exemption to which he was entitled under a court decision; and he alleges that this adverse action was motivated by Defendants' retaliatory animus based on his success in the earlier litigation. Accordingly, his factual allegations appear to support a First Amendment retaliation claim.

9

the actual relief to which it is entitled under either *Rafaeli* or on its takings claims. Plaintiff seeks partial summary judgment on the takings and excessive fines claims.

Summary judgment is proper where the evidence presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it is so defined by substantive law and will affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if the court finds that a reasonable jury could find in favor of the non-moving party. *Id.* Summary judgment is required where "after adequate time for discovery and upon motion … a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court draws all inferences in the light most favorable to the non-moving party. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992).

"The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). In *Rafaeli*, the Michigan Supreme Court unanimously "conclude[d] that our state's common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Rafaeli LLC v. Oakland County*, Docket No. 156849, 2020 WL 4037642, at * 19, --- Mich.--- (July 17, 2020). The court "also recognize[d] this right to be 'vested' such that the right is to remain free from unlawful governmental interference." *Id.* Under *Rafaeli*, Isabella County may not retain proceeds of the foreclosure sale exceeding Plaintiff's tax liability. Because Isabella County did not follow that process here, but kept the full amount of the sale proceeds, not just the $2,200 necessary to satisfy

10

the allegedly unpaid taxes, it has taken property in violation of Plaintiff's constitutionally protected property interest and is obligated to account to Plaintiff for it.[3] Accordingly, as to the second set of claims, the Court finds Plaintiff entitled to summary judgment as to liability on his Fifth and Fourteenth Amendment takings claims,[4] leaving only the question of damages for further litigation.[5]

## CONCLUSION

For these reasons, the Court will dismiss the claims against Defendant Kopke under Rule 12(b)(6) and deny the defense motions to dismiss these claims against Defendants DePriest and Pickens. As to the Fifth and Fourteenth Amendment claims against the County, the Court will grant summary judgment in favor of Plaintiff on liability, leaving open all questions of damages. The Court will also dismiss the Excessive Fine claim that Plaintiff asserted against the County on an alternative basis.

**ACCORDINGLY, IT IS ORDERED**:

1.  Defendant Kopke's Second Motion to Dismiss (ECF No. 74) is **GRANTED**. Defendant Kopke is **terminated** from the case.

---

[3] Now that the Michigan Supreme Court has ruled that Michigan law does not permit a municipality to retain excess sale proceeds, future claims to recover excess proceeds will presumably be unnecessary. It is also possible that Plaintiff now has an available remedy under Michigan law as interpreted by the Michigan Supreme Court in *Rafaeli*. But even if that is theoretically true, it is not clear how that would necessarily apply for this plaintiff at this time. Moreover, after *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), it would not appear that Plaintiff has an obligation to exhaust that option, especially since it just potentially became available. Finally, in addition to those considerations, there remains a potential dispute over whether the Fifth and Fourteenth Amendments require an accounting for not only the excess proceeds, but also for the full fair market value of the property, which could be a higher amount. The Court is not resolving that issue at this time. The parties may litigate the issue in the context of determining the proper amount of damages on these claims.

[4] This makes it unnecessary to rule on the Excessive Fines claim, which Plaintiff brought in the alternative.

[5] As noted above, the damages issues include without limitation the question of whether the County is accountable for only the excess proceeds of sale, or for the excess equity measured by the fair market value of the property. Also as noted above, the Excessive Fines claim is dismissed without prejudice because plaintiff expressly raised this as only an alternative theory.

2. The Motion to Dismiss filed by Defendants Isabella County and Defendant Pickens (ECF No. 72) is **DENIED**.

3. Defendant DePriest's Motion to Dismiss (ECF No. 77) is **DENIED**.

4. Plaintiff's Motion for Summary Judgment (ECF No. 99) is **GRANTED** to the extent Plaintiff seeks summary judgment as to liability on Plaintiff's Fifth and Fourteenth Amendment claims against the County; is **DENIED as moot** with regard to Plaintiff's Excessive Fines claim; and is **DENIED without prejudice** in all other respects.

5. Plaintiff's Objection (ECF No. 116) is **DISMISSED AS MOOT**.


Dated:  September 29, 2020           /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE