# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### (*TRANSFERRED FROM THE WESTERN DISTRICT*)

MICHAEL PUNG,
     Plaintiff,

     Case No.: 20-cv-13113
     Honorable Denise Page Hood

     v.

     **RESPONSE**

COUNTY OF ISABELLA, et al,
     Defendants

_____/

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Pung/Estate
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

CUMMINGS, MCCLOREY, DAVIS & ACHO
ALLAN C. VANDER LAAN (P33893)
Counsel for Pickens/Isabella Co
2851 Charlevoix Dr, S.E., Ste 327
Grand Rapids, MI 49546
(616) 975-7470
avanderlaan@cmda-law.com

CHARLES A. LAWLER (P65164)
CLARK HILL PLC
Counsel for DePriest
212 E. Cesar E. Chavez Ave.
Lansing, Michigan 48906
(517) 318-3100
clawler@clarkhill.com

---

## PLAINTIFF'S RESPONSE TO
## DEFENDANT DEPRIST'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff MICHAEL PUNG, as the personal representative of the ESTATE OF TIMOTHY SCOTT PUNG, by counsel, and opposes Defendant Patricia DePriest's motion for summary judgment made

as to Counts I and II of Plaintiff's Second Amended Complaint. Her motion

should be denied.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

# TABLE OF CONTENTS

STATEMENT OF QUESTION(S) PRESENTED ......................................... ii

MOST RELEVANT AUTHORITY ................................................................iii

BRIEF IN OPPOSITION .................................................................. 1

FACTS ............................................................................................ 1

      I.      Intra-corporate Conspiracy Doctrine ....................................... 13

      II.     Conspiracy (Due Process) ....................................................... 15

      III.    Equal Protection ....................................................................... 19

RELIEF REQUESTED ..............................................................................22

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*i*

## STATEMENT OF QUESTION(S) PRESENTED

Is Defendant DePriest entitled to summary judgment?

**ANSWER:** No

## MOST RELEVANT AUTHORITY

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019)

*Bazzi v. City of Dearborn*, 658 F.3d 598 (6th Cir. 2011)

*Revis v. Meldrum*, 489 F.3d 273 (6th Cir. 2007)

*Village of Willowbrook v. Olech*, 538 U.S. 562 (2000)

**BRIEF IN OPPOSITION**

This case is not about the personal representative, Michael Pung, no matter how much and how inappropriately Defendant Patricia DePriest and her counsel try to improperly defame the personal representative and deflect from DePriest's blatant wrongdoing. Mudslinging is a sign of the weakness of her case. Moreover, she who slings mud generally loses ground.

This case is really about how government officials have abused their powers of office when someone has the audacity to challenge their erroneous decisions about non-owed property taxes. Defendant DePriest was and is wrong about how Michigan's "Principal Residence Exemption" applies when someone passes away. Despite losing before the Michigan Tax Tribunal and being expressly told by the responsible Administrative Law Judge that she was flat wrong, she continued to act contrary to law and it caused the loss of a nearly $200,000 parcel. Muddy spite has no place in the administration of our property tax laws. Material questions of fact remain on whether Patricia DePriest wrongfully used her powers of her office to inflict harm on one who dared questioned her. Section 1983 makes her liable by federal jury.

**FACTS**

In 1991, Timothy Pung purchased his home (i.e. improved real

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

property) located at 3176 St. Andrews Drive, Union Township, in Isabella County (hereinafter the "Pung Property") for the tidy sum of $125,000.00. **Exhibit A**. Fourteen years later, Timothy Pung unexpectedly died in 2004 leaving behind his wife, Donnamarie, and two children. **Exhibit P, ¶3.** Timothy's wife lived in the home until 2008. *Id.,* **¶6.** Immediately thereafter, Marc Pung, Timothy's son, lived at the Pung Property. *Id.,* **¶7.** Until the lawsuit was filed, it has always been occupied by Donnamarie and Marc continuously and held by and in the same of the Timothy's probate estate (which remains unsettled and open due to this litigation and other issues). *Id.* Since Timothy's passing, the Pung Property has not been conveyed by deed to anyone else.

Prior to the time of Timothy's death, the Pung Property had long previously filed for and been granted a valid Principal Residence Exemption ("PRE")—the modern term for what was formerly known as the Michigan homestead property tax exemption. **Exhibits B**; see also **Exhibit D** (confirming the current PRE is formerly known as "homestead exemption"). The affidavit is valid in its existing form. **Exhibit Q, p. 21**.  A PRE credit exempts a primary residence from the tax levied by a local school district for school operating purposes up to 18 mills. **Exhibit D.** The credit results in a reduction of one's property taxes on a year-to-year basis.

2

Under Michigan tax law, when an "owner of property filed an affidavit for an exemption [] before January 1, 2004, that affidavit shall be considered the affidavit required under this subsection for a principal residence exemption and that exemption shall remain in effect until rescinded as provided in this section." MCL 211.7cc(2) The death of an owner does not cancel or automatically rescind the entitlement to a PRE. See *id.*

Notwithstanding, in 2010, Defendant Patricia DePriest, the long-time assessor for Union Township, sua sponte revoked the Pung Property's PRE status for the tax years 2007, 2008, and 2009 for lack of a *new* affidavit following the death of Timothy Pung. See **Exhibit C**. Doing so increased the real property taxes on the Pung Property to an amount equal to the now-revoked PRE credit.

Timothy's uncle and the personal representative (executor) of his probate estate, Plaintiff Michael Pung ("PR Pung"), believed the actions of Defendant DePriest to be in legal error and challenged her decision. See **Exhibit P, ¶8**. Such challenges go before the Michigan Tax Tribunal, a specialized Michigan non-judicial tribunal presided over by an ALJ. See **Exhibit Q, p. 24**. On March 7, 2012, ALJ Lasher found in favor of the Estate and declared the PRE credit as rightfully belonging to the Pung Property and was wrongful taken away by Defendant DePriest. **Exhibit C**. In other words,

3

the tax-increase imposed by DePriest was never due and removing the PRE by DePriest was in error. *Id.* Ironically and defiantly, DePriest <u>still</u> refuses to accept that binding ruling against her. **Exhibit Q, p. 24** ("I don't believe I made an error, sir."), *id. at 25* ("I did not error in denying '7, '8 and '9."); but see *id. at 27* (Q: "[t]he Michigan Tax Tribunal Administrative Law Judge did not agree with your [DePriest's] position in this case, correct? DePriest. Correct") with **Exhibit C** (finding DePriest errored). Moreover, ALJ Lasher never required a new PRE affidavit because the original 1994 affidavit was already on file. **Exhibit C**. As DePriest herself confirmed, ALJ Lasher expressly instructed her at the hearing that the Estate "didn't have to" sign any further affidavit[1] to be entitled to the PRE credit. **Exhibit Q, p. 43**.[2] In short, Defendant DePriest simply lost due to her error of law. This apparently stung her hard and personally.

Despite ALJ Lasher's decision, Defendant DePriest *still* blatantly refused to return the PRE credit back to the property tax rolls as to the Pung Property. This, again, directly resulted in a similar unpaid amount of property

---

[1] Throughout DePriest's motion, she attempts to frame the issue as one as the Pung family simply refusing to sign a new affidavit. Yet, her briefing does not mention even once that ALJ Lasher expressly told DePriest that such an affidavit was NOT required or needed. DePriest is blatantly misrepresenting the material facts by omission. Her deposition was literally a drop-the-mic event of key concessions that runs contrary to her counsel's presentation in the brief.

[2] The undersigned attempted to obtain a transcript of that hearing. The State does not retain transcripts or recordings of those hearings.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

taxes equal to an amount consisting of the PRE credit amount for the 2010 and 2011 tax years.

Despite knowing this tax cannot possibly be imposed due to ALJ Lasher's decision and oral directive, the County Treasurer, Defendant Steven Pickens, nevertheless began tax foreclosure proceedings on the Pung Property for the "unpaid" amount of the PRE for 2010 and 2011 as a result of DePriest's obstinance against ALJ Lasher's directive. PR Pung again challenged that decision before the local circuit court in Mount Pleasant, Michigan and prevailed. **Exhibit E**.[3]

About this same time in February 2013, Defendant DePriest begins yet again to undertake shocking and wrongful action. MCL 211.7cc(6) provides that if Defendant DePriest, as the assessor, believes a property is not entitled to its PRE credit, she may revoke it by 1.) notifying the owner and 2.) the Michigan Department of Treasury in writing of the reason for the denial. The assessor must advise the owner that the denial may be appealed to the Michigan Tax Tribunal within 35 days thereafter.  Remember, since March 2012 (a year prior), DePriest already knew from ALJ Lasher's prior decision

---

[3] Pickens later appealed; the Court of Appeals affirmed in 2015. **Exhibit F**. The Michigan Court of Appeals concluded that the Tax Tribunal had "conclusively established" entitlement to the PRE credit and that under the doctrine of res judicata the Tax Tribunal's conclusion is conclusive as to the rights of the parties and their privies. *Id.* That would include the Estate, Pickens, and DePriest.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

that there was no basis to deny the PRE credit while the Estate held the property when probate remained ongoing. So there was absolutely no reason deny the PRE credit for the 2010, 2011, or 2012 tax year when nothing changed since ALJ Lasher's decision.

Initially, for the Winter 2012 taxes (calculated in later 2011), DePriest correctly applied the PRE credit consistent with ALJ Lasher's decision. It is undisputed that the issued tax bill for the Pung Property contained the PRE credit. **Exhibit R.** DePriest testified she "granted" (i.e. applied) the credit for the Winter 2012 tax bill because she was "tired of fighting" and because "Judge Lasher said they didn't need to" to submit another PRE affidavit. **Exhibit Q, p. 42.**[4]  She is right. DePriest further conceded that "a property owner would have believed and understood that the PRE credit had been fully and completely granted" based on the Winter 2012 tax bill. **Id. at 34-35**. It is undisputed that PR Pung later paid this actual-billed amount in full for the Estate containing the PRE credit. **Exhibit P, ¶10.**

Yet, _after_ the Winter 2012 tax bills went out in December, DePriest apparently became re-invigorated to, once again, revoke the PRE credit on

---

[4] DePriest went to say that notwithstanding the statute required a new affidavit even though Judge Lasher's decision concluded otherwise. DePriest was asked which statute was the one she was referring to. She asserted MCL 211.78cc(2). The statute provides no such obligation.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

February 7, 2013 despite being told by both explicitly by ALJ Lasher and implicitly by the Court of Appeals that such not occur. DePriest posits that she was told by then Chief Clerk of the Michigan Tax Tribunal, Peter Kopke, that she "had no right to give that homestead [PRE credit] and [she] had to deny it." **Exhibit G, p. 49**; see also **DePriest Affidavit, ECF No. 19-7, PageID.668** (similar). But that is simply false. Clerk Kopke has offered an affidavit averring that he "did not provide legal advice or direction to anyone regarding any ongoing property tax issues or disputes" because "such advice or direction is prohibited by law." **Kopke Affidavit, WD ECF No. 74-1, PageID.683 (Exhibit W).** He also confirms that he "did not provide any legal advice to or direct Ms. DePriest to take any action regarding any property owned by Mr. Pung." *Id.* For purposes of this motion, these facts must be viewed in the light most favorable to PR Pung and thusly we must accept that Mr. Kopke confirms that DePriest is again not telling the truth when she said she relied upon his advice.

DePriest again revoked even though the tax bills had already been previously issued over two months prior. **Exhibit P, ¶¶11-12**. It is also Plaintiff's position that DePriest never followed the processes of MCL 211.7cc(6). **Exhibit P, ¶13**. There is no record at the Michigan Department of Treasury of any such revocation of the PRE being issued and Plaintiff

7

Pung avers, under oath, he <u>never</u> received any such notice from DePriest.

**Exhibit P, ¶13**. Interestingly, DePriest, in her deposition, could not

remember if she mailed a copy of the notice to the Department of Treasury—

> Estate Counsel: Ms. DePriest, I'll represent to you that I have contacted the Michigan Tax Tribunal and the Michigan Department of Treasury, and neither one of them have a copy of this document [Notice of Revocation] in their files signed or unsigned. Do you have any explanation for that based on your experience as a tax assessor?
>
> DePriest: I don't remember what happened.
>
> ***
>
> Estate Counsel: Well, you just testified you mailed one to the state department of treasury, correct?
>
> DePriest: Sir, I don't remember.

**Exhibit Q, p. 49.** From Plaintiff's position, DePriest secretly revoked the PRE

without notice to the Estate or the Department of Treasury to intentionally

create a false tax debt not actually owed. Plaintiff also believes this was done

in concert with Defendant Pickens given the pending litigation in the local

circuit court as to the 2010/2011 tax challenge which did not contain the PRE

credit either. No such notice was ever received by Mr. Pung (as the PR of

the Estate) and anyone associated with the property (like Timothy's son,

Marc). **Exhibit P, ¶13.**

DePriest, on the other hand, claims, at different times, she did send

the notice and PR Pung simply never timely appealed. Her story is facially

inconsistent. In her deposition, she claims she sent the notice to PR Michael

8

Pung in Alma. **Exhibit Q, pp. 56** ("I actually sent it to Mr. Pung[5] in Alma[6]").

Yet, in a letter to her counsel (as turned over by her counsel in this case),

she asserts she sent the notice to _Marc_ Pung, Timothy's son, in Mount

Pleasant. **Exhibit S.** Viewing the light in favor of Plaintiff, DePriest is blatantly

inconsistent and now a documented fabricator.

Because no written notice was received by PR Michael Pung, he, as

the PR, was never given the opportunity to appeal Winter 2012 denial of the

PRE credit despite the fact that the exact same issue as had been fought by

him (and later rejected for 2007, 2008, 2009, 2010, and 2011 by ALJ Lasher

and ultimately confirmed by the Court of Appeals). By the time Defendant

DePriest's debauchery was realized by the Estate, it was simply too late to

activate the machinery of the Tax Tribunal despite written requests for the

help. See **Exhibit U**. Defendant DePriest acted intentionally and falsely to

handicap the Estate and inflict harm.[7]

A year later in 2014, Defendant Pickens, on behalf of Isabella County,

re-commenced tax foreclosure proceedings once again against the Pung

Property for not paying the non-owed improper remaining balance added by

DePriest as to the Winter 2012 taxes, plus the interest and penalties

---

[5] Marc Pung is Timothy Pung's son. See **Exhibit P, ¶7.**
[6] PR Michael Pung lives at 5475 Blue Heron Dr, Alma, Michigan.
[7] State Court Judge Paul Chamberlain chastised Treasurer Pickens

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

generated (without notice).[8] Defendant Pickens acted, in concert with DePriest, with both <u>knowing</u> that the unpaid tax "debt" was based on fully discredited theory of the lack of a new affidavit. Because such was discredited, the tax was never legally owed. Michigan tax foreclosures are handled as an *in-rem* petition filed by Defendant Pickens with the local state circuit court. MCL 211.78k. Again, actual notice of foreclosure from Pickens was also not received by PR Pung that the Pung Property was being foreclosed upon for improper remaining balance not actually owed. **Exhibit P, ¶¶15-22.**

Michigan has some the strictest tax foreclosure standards. If a property is not redeemed before March 31 of the forfeiture year, there is nothing a Michigan court can do to set aside a judgment, <u>even when the judgment of foreclosure was erroneously entered</u>. See *In re Petition of Tuscola County Treasurer for Foreclosure*, 317 Mich App 688 (2016). Moreover, actual notice is not required to meet due process requirements on the *in-rem* foreclosure petitions in Michigan. Sadly, only notice PR Pung received from Defendant Pickens regarding foreclosure was a letter dated two days after the last possible redemption date of March 31 while the dated letter was not mail it until April 22. **Exhibit P, ¶21.** PR Pung took immediate legal steps to set

---

[8] This amount (with interest and penalties) was only $2,241.93. **Exhibit H.**

aside the foreclosure again for a tax in 2012 that was never owed. PR Pung and his counsel tried fervently to get the forfeiture reversed via actions before the Isabella County Trial Court. PR Pung was initially successful. **Exhibit I**. Yet, the County Treasurer appealed to seize the Pung Property on a tax he knew was never owed and the Michigan Court of Appeals reversed concluding that the Michigan Legislature divested the state circuit court of the authority to set aside a tax foreclosure for lack of notice. **Exhibit J**. The Michigan Supreme Court refused to take action on the case. **Exhibit K**. A final foreclosure judgment was entered on June 12, 2018. PR Pung filed suit on November 30, 2018. **Compl (West Dist Docket), ECF No. 1**. Pickens, on behalf of Isabella County, sold the Pung Property at tax auction and conveyed it to another on July 16, 2019 (after this lawsuit had started). **Exhibit L**. The property is worth at least $194,400 by the government's own record admissions. **Exhibit M** (twice Final SEV[9]).

---

[9] Michigan's property tax assessors annually determine the market value of a piece of property. A property's "true cash value" is "the fair market value or the usual selling price of property." MCL 211.27. Courts "treat[] the concept of true cash value as being synonymous with fair market value." *Gardner v. Dep't of Treasury*, 498 Mich. 1, 8 (2015); *Detroit Lions, Inc. v. City of Dearborn*, 302 Mich. App 676, 696 (2013) (same). The "State Equalized Value" (or sometimes commonly known as simply "SEV") of a property is the term that means one half (1/2) of a property's True Cash Value. *Van Brouck & Associates, Inc v. Darmik, Inc.*, 329 F. Supp. 2d 924, 931 (E.D. Mich 2004); *Gardner*, 498 Mich at 7-8; see also http://www.michigan.gov/taxtrib/0,4677,7-187-25923-126336--,00.html. As the Michigan Supreme Court has confirmed, Michigan law directs that a "property's [S]tate [E]qualized [V]aluation shall not exceed 50% of the [T]rue [C]ash [V]alue of the property on the assessment date." *Gardner*, 498 Mich. at 7 fn10. This constitutes a reasonable way to compute damages.

## STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The Court must view the facts in the light most favorable to Plaintiff by this motion. Making assessments of Defendant DePriest's version of events versus Plaintiff PR Pung's version of events is a creditability assessment or otherwise the weighing of evidence, which is expressly not the job or within the province of this Court on a Rule 56 motion. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2nd Cir. 2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); see also *Laster v. City of Kalamazoo*, 746 F.3d 714, 267 (6th Cir. 2014). Instead, "the judge's function is not h[er]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016); *George v. Youngstown State Univ.*, 966 F.3d 446, 458-459 (6th Cir. 2020) (reaffirming *Jackson* standard).

## ARGUMENT / MEMORANDUM OF LAW

Defendant DePriest has two Section 1983 claims pending. The first is a conspiracy to violate due process. **Sec Am Compl, ¶¶47-69.** The second

is an equal protection class-of-one claim. **_Id.,_ ¶¶70-82.** In turn, she seeks summary judgment on three grounds. First, she argues the intra-corporate conspiracy doctrine bars Count I. Second, she claims there is no jury-triable evidence of a conspiracy in Count I. Third, she argues that there is no evidence of an equal protection violation under Count II. The arguments fail.

## I.      Intra-corporate Conspiracy Doctrine

The "intra-corporate conspiracy" doctrine prevents liability "where two (2) or more employees _of the same entity_ are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." _Jackson v. City of Cleveland_, 925 F.3d 793, 818 (6th Cir. 2019) (emphasis added). Defendant DePriest argues that she, working for Union Charter Township, is actually an employee of Isabella County (the same as Defendant Pickens, who is the treasurer of Isabella County) and thus the doctrine applies. It makes no factual sense. Defendant DePriest even recognizes the fatal problem of her argument by herself. **Br-DePriest, ECF No. 19, PageID.581.** An assessor is an agent of (and works for) _the charter township_, not Isabella County. See MCL 42.11a.

In light of this fatal facial flaw, DePriest fails to cite even a single case which applies the little-used doctrine to a charter township assessor and a county official (treasurer) as being a single "collective" entity. Instead, she

13

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

points to *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*,
926 F.2d 505, 510 (6th Cir. 1991). In *Hull*, the defendants were all part of the
Cuyahoga Valley Joint Vocational School District—including its Board of
Education, its superintendent, its executive director, and a school
administrator. The Sixth Circuit correctly applied the doctrine because they
all worked for the same school system.

*Hull*—and cases like it—are not instructive to the current case. Here,
the two persons involved as part of the conspiracy (or three persons if we
count Clerk Peter Kopke), were from and working for completely different
governmental entities. The doctrine requires the defendants to be from the
"same entity" to apply. *Jackson*, 925 F.3d at 818. DePriest suggests that
because each defendant is involved in a separate distinct facet of the tax
collection process that this nonetheless made all defendants a "collective
entity" as to the collection and assessment of real property taxes. Not good
enough. The "intra-corporate conspiracy doctrine does not apply" where
each defendant is a "member of a different agency." *Novak v. City of Parma*,
932 F.3d 421, 436-437 (6th Cir. 2019). Here, because each defendant is
undisputedly from a different government agency, *Novak* (together with the

14

explicit elements of the doctrine) precludes the use of the doctrine. The argument fails.[10]

## II. Conspiracy (Due Process)

DePriest next argues that PR Pung has failed to create a jury-reviewable question as to the existence of a civil conspiracy via the Second Amended Complaint. She is wrong.

Governmental officials cannot enter into a conspiracy to deprive a citizen of its constitutional rights. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011); *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi*, 658 F.3d at 602. There must be (1) a plan, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis*, 489 F.3d at 290.

Like all good conspiracies, no one will ever admit such a conspiracy existed when called to court to account. Illegal conspiracies are never reduced to a written agreement for obvious reasons. "Rarely in a conspiracy case will there be direct evidence of an express agreement among all the

---

[10] Moreover, it appears that Defendant DePriest has never filed any affirmative defenses. Plaintiff also argues that the intra-corporate conspiracy in an affirmative defense which must be pled. It has never been pled by Defendant DePriest.

conspirators to conspire." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000). Instead, a plaintiff may rely on circumstantial evidence to establish an agreement among the conspirators. *Id.*; see also *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (same). Moreover, each conspirator need not have known all of the details of the illegal plan or all of the participants involved to still be part of an illegal conspiracy. *Bazzi*, 658 F.3d at 602.

Here, the gist of the claim is that each Defendant agreed to engage in a plot, by use of their public office's powers, to deprive the Estate of its PRE credit with the goal of causing the Estate to ultimately lose the ≈$200,000 Pung Property by tax foreclosure. DePriest never denies it in her motion. But the facts, when viewed in the light most favorable to the Estate[11], shows that a conspiracy exists with circumstantial evidence.

First, DePriest *knew* that she lacked any good faith or lawful authority to revoke the PRE credit for the 2012 taxes in February 2013. She conceded she was expressly instructed by ALJ Lasher that a new PRE affidavit was *never* required. Yet, she still revoked the PRE credit for a lack of a new affidavit in 2013 for the Winter 2012 taxes for this exact—yet discredited—reason. After doing that, she then never sent notice of post-tax bill revocation to the State or to Plaintiff.

---

[11] See the standard of review, *supra*.

16

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

When the County Treasurer tried to foreclose DePriest's wrongful revocation of the 2010/2011 PRE credit also in 2013 using the same discredited theory, all of Defendant Pickens' "arguments [were] directed toward [the Estate's] ability to get a principal residence exemption after Timothy Pung's death in the first place." **Exhibit F.** Previously in 2012, Treasurer Pickens was also expressly informed of ALJ Lasher's decision that a lack of a new PRE affidavit was never required and the tax rolls containing an outstanding tax debt based on the same were legally erroneous. **Exhibit U, p. 23.** Letters from PR Pung at the time informed and confirmed to Defendant Pickens that Defendant DePriest was again trying to illegally deny the PRE for the same reasons expressly rejected by ALJ Lasher. **Exhibit U, p. 50** (confirming receipt of what was Exhibit K in deposition and now **Exhibit V** in this filing). Yet knowing that blatant violation of law, Defendant Pickens nevertheless still tried to fully enforce DePriest's blatantly and knowingly wrongful revocation of the PRE credits in 2010 and 2011 despite knowing and having received ALJ Lasher's express decision and PR Pung's confirmation otherwise. The Court of Appeals confirmed the same in 2015 when it later admonished that "Tax Tribunal has already conclusively ruled that [Estate] is the owner of the property, and because Timothy and Donnamarie Pung have lived at the subject property continuously since

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

2004, respondent is entitled to the principal residence exemption." **Exhibit F.** As such, as of the end of March 2013, Defendant Pickens fully *knew* that DePriest's revocations of the PRE credit (that Pickens was tasked to enforced) were without *any* legal merit. **Exhibit V**.

When the 2012 foreclosure process started in 2014 for the Pung Property, Defendant Pickens still sought foreclosure on the Pung Estate for taxes equal to the PRE credit he then knew was never due as a result of ALJ Lasher's decision. **Exhibit H**. Yet, he foreclosed anyways with direct knowledge of direct-contrary information and in further supporting Defendant DePriest blatantly illegal position. Why? To get back at Mr. Pung who kept challenging him in court. Pickens also purposely never provided notice to PR Pung—using the same modus operandi as DePriest—to pass the Estate to the point of no return.

The facts here by both Defendant DePriest (by her actions in February/March 2013) and Pickens (in March/April 2014) are enough to show circumstantial evidence to establish an agreement using a similar model among them as conspirators to cause the illegal and improper foreclosure of the Estate's property for a small unpaid tax that both KNEW was not owed in the first place in light of receipt and knowledge of ALJ

Lasher's March 2012 decision.[12] While it is true that Defendants did not have a written-out contract to present to the Court to show an express agreement to inflict these harms, their joint and nearly-identical actions, acting in direct contravention to ALJ Lasher's decision, are enough to show the a single plan existed to foreclose on the Pung Property for a tax never owed. A triable jury question remains.

## III.   Equal Protection

Lastly, DePriest argues that the equal protection class-of-one claim fails for lack of any evidence. However, it is the lack of existing evidence elsewhere, based on Defendant DePriest's own testimony, that proves this claim.

DePriest correctly acknowledges that a wronged citizen may bring a class-of-one claim rooted in the Equal Protection Clause, citing *Village of Willowbrook v. Olech*, 538 U.S. 562, 564 (2000). To establish a class-of-one claim, plaintiffs must show that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

---

[12] Defendant Pickens has not been able to explain how, when having actual knowledge of both ALJ Lasher's March 2012 decision and of Defendant DePriest's blatantly illegal revocation of the PRE credit using the reject theory of a lack of a new affidavit (and was told of the same), he could still possibly foreclose on the Pung Property in March/April 2015 for "unpaid" 2012 taxes which we never due.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

In *Olech*, the Olechs asked the Village to connect their property to the municipal water supply but the Village conditioned the connection on the granting of a 33-foot easement. The Olechs objected, claiming that the Village has no such obligation for anyone else when seeking access to the water supply. Olech asserted that the 33-foot easement demand was unequal treatment from others similarly situated. The Supreme Court recognized the cause of action, explaining "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute *or by its improper execution through duly constituted agents*." *Id.* at 564 (emphasis added).

Here, the Estate was subjected to a one-of-a-kind arbitrary requirement that a new affidavit had to be submitted when the named owner had passed away but the property has not yet transferred from the Estate to the beneficiaries or a new owner. Now perhaps for tax years 2007-2009 that argument could fly when DePriest believed, albeit erroneously, she *had* to do this under Michigan law.[13] However, by ALJ Lasher's decision in March

---

[13] In her deposition she was specifically requested to cite the applicable statute (given her over fifteen years of service to the Township as an assessor). **Exhibit Q, pp. 46, 10.** She cited "211 cc(2)." *Id.* **at 46.** There is no such statute. But even assuming she meant MCL 211.7cc(2), that statute does not contain that requirement.

2012, Defendant DePriest had actual knowledge that her belief of a needed new PRE affidavit was expressly rejected by the binding decision of the Tax Tribunal as between her and the Pung Estate.[14] This was an improper execution of Michigan tax law through a duly constituted agent. Yet, DePriest still, nevertheless, AGAIN revoked the PRE credit in February 2013 in an irrational and wholly arbitrary manner.

The best evidence is Defendant DePriest's own testimony. Plaintiff's counsel, over the constant inappropriate interruptions[15] and improper speaking objections of her counsel, asked DePriest to identify literally _anyone_ where Defendant DePriest had revoked a PRE because the personal representative of the Probate Estate was administering a property that had a valid PRE affidavit in place before the decedent's death but no one to sign as the new owner thereafter. **Exhibit Q, pp. 68-71.** Despite claiming these circumstances "regularly" happens, DePriest could not identify even a single property from her entire 15-year career at Union Charter Township. **Exhibit Q, p. 70.** She also fails to present a single example to her motion nor

---

[14] In fact, the legal principle was applied by the Court of Appeals under the doctrine of res judicata. See **Exhibit F**.

[15] For example, when the Estate's counsel recounted to DePriest that she was asked "why this PRE affidavit was required" and she responded that "the statute required it" and then asked DePriest to "supply to me what [was the] statute," Mr. Lawler objected on "asked and answered" grounds claiming DePriest had "already g[iven it] you the cite ten minutes ago."  **Exhibit Q, p. 46.** However, a review of the record confirms that the assertion is simply not true.

produced any in discovery. In sum, the Estate and the Pung Property were treated differently than others similarly situated—even in the face of ALJ Lasher's decision.

The production of no evidence when alleged strong evidence should exist can only lead to the conclusion that DePriest's assertions are patently false. "Silence then becomes evidence of the most convincing character." *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 225-226 (1939). As such, a material question of fact remains to be resolved by the jury as to whether the Estate has been "intentionally treated differently from others similarly situated" by being denied a PRE credit when so entitled and, especially in light of ALJ Lasher's decision, "there is no rational basis for the difference in treatment." An equal protection class-of-one claim remains.[16] The motion for summary judgment should be denied.

## RELIEF REQUESTED

WHEREFORE, the Court is requested deny Defendant DePriest's motion for summary judgment.

---

[16] Contrary to the implicit suggests of DePriest, her "subjective motivation" is irrelevant in these circumstances. *Olech*, 538 U.S. at 565.

Date: October 12, 2021                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
by PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Attorney for Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on date stated below, I filed the foregoing document with the ECF/CM system which will serve an email copy of the same to all counsel of record (at their email address of record) on the date stated below.

Date: October 12, 2021                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
by PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Attorney for Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com