UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PUNG, as personal representative of the Estate of Timothy Scott Pung,

        Plaintiff,

v.

COUNTY OF ISABELLA, STEVEN W. PICKENS, in his official and personal capacity, and PATRICIA DePRIEST, in her personal capacity,

        Defendants.

_____/

CASE NO. 20-13113
HON. DENISE PAGE HOOD

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT [#8]
and DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL [#7]**

I.    **INTRODUCTION**

This cause of action was filed in the Western District of Michigan in 2018 and assigned to Chief Judge Robert J. Jonker. *See* Western District of Michigan, No. 18-01334. On September 29, 2020, Judge Jonker granted Plaintiff's partial motion for summary judgment, holding that Plaintiff was entitled to summary judgment

1

with respect to his Fifth and Fourteenth Amendment takings claims regarding certain property in the County of Isabella. Effective November 23, 2020, Judge Jonker transferred this cause of action to the Eastern District of Michigan. Plaintiff then filed in this Court a Motion to Compel, ECF No. 7, and a Motion for Summary Judgment with respect to Counts III, IV, and V (pertaining to Defendants County of Isabella and Steven W. Pickens, in his official and personal capacities ("Pickens")). For the reasons that follow, the Court denies in part and grants in part Plaintiff's Motion to Compel and grants in part and denies in part Plaintiff's Motion for Summary Judgment.

## II. STATEMENT OF FACTS

As stated by Judge Jonker in his motion granting summary judgment with respect to liability on Plaintiff's Fifth and Fourteenth Amendment claims:

> Plaintiff is the personal representative of the estate of his brother, Timothy Scott Pung, one asset of which was a homestead in Isabella County. Timothy Pung died in 2004. His wife survived him and continued living in the house until her death in 2008, immediately after which his son, Marc Pung, lived continuously in the house. In 2013, Isabella County began a tax foreclosure process against the property over what it said was about $2,200 in unpaid real estate taxes [$2,241.93]. That process culminated in a final foreclosure judgment in June 2018. The ensuing foreclosure sale yielded about $76,000 [$76,008.00]. Plaintiff says there were never actually any unpaid taxes due at all, and that the County therefore never had a lawful basis to foreclose. But even if the foreclosure itself was proper, Plaintiff says that at a minimum the County had an obligation to account to Plaintiff for the excess sale proceeds above the amount necessary to satisfy the unpaid tax bill. This has spawned two sets of currently pending claims.

\* \* \* \* \*

## SECOND SET OF CLAIMS

Plaintiff's second set of claims asserts that the County itself unconstitutionally kept all the proceeds from the tax sale, rather than just the relatively small amount necessary to satisfy the balance of the tax bill allegedly still due. Plaintiff says this is either a Fifth and Fourteenth Amendment takings claim; or failing that for some reason, a violation of the Eight Amendment's prohibition on excessive fines. The defendants' position throughout most of this litigation has been that Michigan law expressly permits a County to retain the full amount of any tax foreclosure proceeds, not just the amount necessary to satisfy an outstanding bill; and that this does not amount to an unconstitutional taking because the taxpayer forfeited any protected property interest as a result of the order of foreclosure that necessarily preceded the tax sale itself.

The Michigan Supreme Court recently rejected the defense view of Michigan tax foreclosure law in a unanimous decision holding that a municipality in Michigan is obligated to account for all sale proceeds above the amount necessary to satisfy any unpaid tax obligation. *Rafaeli LLC v. Oakland County*, Docket No. 156849, 2020 WL 4037642, [505 Mich. 429] (July 17, 2020).

Western District, ECF No. 119, PageID.1348-50. Judge Jonker ultimately concluded that:

"The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Township of Scott*, *Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). In *Rafaeli*, the Michigan Supreme Court unanimously "conclude[d] that our state's common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Rafaeli LLC v. Oakland County*, Docket No. 156849, 2020 WL 4037642, at \* 19, --- Mich.--- (July 17, 2020). The court "also recognize[d] this right to be 'vested' such that the right is to remain free from unlawful

3

governmental interference." *Id*. Under *Rafaeli*, Isabella County may not retain proceeds of the foreclosure sale exceeding Plaintiff's tax liability. Because Isabella County did not follow that process here, but kept the full amount of the sale proceeds, not just the $2,200 necessary to satisfy the allegedly unpaid taxes, it has taken property in violation of Plaintiff's constitutionally protected property interest and is obligated to account to Plaintiff for it.[3] Accordingly, as to the second set of claims, the Court finds Plaintiff entitled to summary judgment as to liability on his Fifth and Fourteenth Amendment takings claims,[4] leaving only the question of damages for further litigation.[5]

_____

[3] Now that the Michigan Supreme Court has ruled that Michigan law does not permit a municipality to retain excess sale proceeds, future claims to recover excess proceeds will presumably be unnecessary. It is also possible that Plaintiff now has an available remedy under Michigan law as interpreted by the Michigan Supreme Court in *Rafaeli*. But even if that is theoretically true, it is not clear how that would necessarily apply for this plaintiff at this time. Moreover, after *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), it would not appear that Plaintiff has an obligation to exhaust that option, especially since it just potentially became available. Finally, in addition to those considerations, **there remains a potential dispute over whether the Fifth and Fourteenth Amendments require an accounting for not only the excess proceeds, but also for the full fair market value of the property, which could be a higher amount. The Court is not resolving that issue at this time. The parties may litigate the issue in the context of determining the proper amount of damages on these claims**.

[4] This makes it unnecessary to rule on the Excessive Fines claim, which Plaintiff brought in the alternative.

[5] As noted above, the damages issues include without limitation the question of whether the County is accountable for only the excess proceeds of sale, or for the excess equity measured by the fair market value of the property. Also as noted above, the **Excessive Fines claim is dismissed without prejudice because plaintiff expressly raised this as only an alternative theory**.

Western District, ECF No. 119, PageID.1357-58 (emphasis added).

The Court notes that the operative complaint for this cause of action is the Second Amended Complaint. Plaintiff's Second Amended Complaint asserts five

claims: a conspiracy to violate due process by former defendant Peter M. Kopke, DePriest and Pickens (Count I); an Equal Protection Violation – Class of One, against all Defendants (Count II); an Eighth Amendment excessive fine claim against Isabella County and/or Pickens (Count III); Fifth/Fourteenth Amendment Taking against Isabella County and/or Pickens (Count IV); and Fifth/Fourteenth Amendment Taking Inverse Condemnation/Michigan Constitution against Isabella County (Count V). All of the claims stem from the determination by Union Township Assessor (and Defendant) Patricia DePriest to deny Michigan's "Principal Residence Exemption" ("PRE"), f/k/a a homestead exemption, to the property. Plaintiff states, and Defendants have not challenged, that the value of the property is at least $194,400 (which is double the State Equalized Value), a sum significantly in excess of the $76,008.00 for which the property was sold at the tax foreclosure sale.

## III.   LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a

material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

### A. Motion for Summary Judgment

There are a few key things to note about this case, at least a couple of which one party or another is ignoring or overlooking. First, the issue of whether the property was illegally foreclosed upon has been decided. Plaintiff lost a "due

6

process" challenge against Pickens with regard to the 2015 foreclosure proceedings. Specifically, the Michigan Court of Appeals held that Plaintiff "was not deprived of its constitutional right to due process." *In re Petition of Isabella County Treasurer*, No. 329858, 2017 WL 1393854 (Mich. Ct. App. 2017). ECF No. 15-2, PageID.88-91. Plaintiff's repeated suggestions that Defendants illegally foreclosed on the property in 2015 because the property should have been treated with a PRE are irrelevant.

Second, Plaintiff's efforts to seek summary judgment on his claims that he has been subjected to an "excessive fine," in violation of the Eighth Amendment need not be considered. Judge Jonker previously dismissed Plaintiff's Eighth Amendment "excessive fine" claims (Counts II and III) without prejudice because Plaintiff brought it in the alternative. Accordingly, the Court denies as moot Plaintiff's motion for summary judgment with respect to Counts II and III (the Eighth Amendment claims).

Third, contrary to Defendants' belief that Judge Jonker erred regarding his liability determination vis a vis the Fifth and Fourteenth Amendment takings claims, that liability determination is the law of the case and will not be reconsidered by this Court (although Defendants can challenge it in the Court of Appeals, as they have indicated they will do).

7

What is now before the Court, then, is whose argument is correct regarding the formula for damages: (a) Plaintiff's contention that he should be compensated for the amount that the alleged "equity" in the property (*i.e.*, the fair market value of the property) exceeded Plaintiff's tax debt; or (b) Defendants' assertion that Plaintiff is entitled only to the amount by which the sale price at the foreclosure exceeded Plaintiff's tax debt (the "surplus proceeds").

*1.     Defendants' Argument*

Defendants state that the Court in *Rafaeli* recognized that Michigan's General Property Tax Act's ("GPTA") statutorily mandated retention of "surplus proceeds" from the sale to be a "taking" under the Michigan Constitution. Defendants believe the *Rafaeli* opinion is particularly relevant to the claims at issue for two reasons. First, Defendants argue that the *Rafaeli* court recognized that denial of "refunds" resulted from a state statute, not an enactment of a policy by Defendants County of Isabella or Pickens.  Defendants contend that those refunds (arising out of a state statute) are the "property interest" recognized by *Rafaeli* and the basis for Judge Jonker's finding of liability under the Fifth Amendment. Because Judge Jonker concluded that the liability under the Fifth Amendment is predicated on a state law property interest, Defendants assert, they cannot be held liable for a federal claim under 42 U.S.C. §1983.  They argue that the denial of refunds was not the result of any "policy" of the Defendants but, rather, due to the

8

"policy" of the State of Michigan embodied in the GPTA, as enacted by the State Legislature. Defendants insist that Judge Jonker found Fifth Amendment "liability" without addressing this point.

Defendants argue that *Rafaeli*: (a) provided that the "property interests" lost by the foreclosed taxpayer are only the "surplus proceeds" from the foreclosure sale; and (b) expressly rejected an equity-based or "fair market value" definition of that property interest. *Rafaeli*, 505 Mich. at 483 ("We reject the premise that just compensation requires that plaintiffs be rewarded the fair market value of their properties so as to be put in as good a position had their properties not been taken at all."). Defendants point to the *Rafaeli* court's conclusion that, "when property is taken to satisfy an unpaid tax debt, just compensation requires the foreclosing governmental unit to return any proceeds from the tax-foreclosure sale in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property - - no more, no less." *Id*. at 483-84.

Defendants believe that if they can be held liable at all (under either state or federal law), Plaintiff cannot recover for an equity-based or "fair market value" claim as he now attempts. Defendants maintain that the Constitution protects – but does not "create" – any property interest. Citing *Leis v. Flynt*, 439 U.S. 438, 441 (1979). Defendants declare that, if the Plaintiff has any "property interest" to be

9

compensated, it can be no more than the "surplus proceeds" property interest recognized by the Michigan Supreme Court in *Rafaeli*.

Defendants argue that the *Knick* opinion does not hold that "full compensation" is determined by any source other than what state law declares the extent of the plaintiff's "property interest" to have been. Defendants contend that, although the Fifth Amendment "allows the owner to proceed directly to federal court under §1983," *Knick*, 139 S. Ct. at 2171, it does not create the property interest by which either the fact or the amount of a "taking" is determined. Citing *Leis*, 439 U.S. at 441, *Phillips*, 524 U.S. at 164.

Defendants argue that the eminent domain cases cited by Plaintiff to argue that the measure of his compensation must be his "equity" in the "total value" of the property ignore the underlying question that must precede the determination of "just compensation." Defendants state that the key question is whether the Plaintiff has a "property interest" in such "total value" equity from a source of law independent of the federal constitution – "what has the owner lost?" ECF No. 8, PageID.65. Defendants contend that the Michigan Supreme Court has answered: "surplus proceeds."

Defendants state that, although a county chooses whether or not to serve as the "foreclosing governmental unit" or to default that role to the State of Michigan, M.C.L. 211.78(6) ("The foreclosure of forfeited property by a county is voluntary

and is not an activity or service required of units of local government for purposes of section 29 of article IX of the state constitution of 1963."), full participation by the county and its treasurer in the process is still required, including the denial of refunds. This is true, Defendants claim, even if the County defaults the role of foreclosing governmental unit to the State. By mandate of the GPTA, the properties of delinquent taxpayers "shall be returned as delinquent for collection," M.C.L. 211.78a(2), the county treasurer "shall send notice" to the taxpayer, M.C.L. 211.78c, and the county treasurer "shall prepare a list of all property subject to forfeiture for delinquent taxes," M.C.L. 211.78e(1). Defendants argue that the property "shall" be subjected to foreclosure proceedings, M.C.L. 211.78h, and the property will then be sold, with no option for the county to handle the funds it receives in any manner other than as prescribed by M.C.L. 211.78m(8), which prohibits refunds (as recognized by the Supreme Court in *Rafaeli*).

    Defendants argue that, even if a county chooses not to make itself or its treasurer the foreclosing governmental unit ("FGU"), the GPTA still requires the county treasurer to take the statutory steps to facilitate the state's foreclosure and sale of the property and to enforce the ensuing denial of any refund. The choice by a county to act (through its treasurer) as the "foreclosing governmental unit" is irrelevant to whether the county or treasurer could refund any money to Plaintiff, as neither ever had such an option under any scenario. Defendants insist that this

11

was not a "policy" of the county or the treasurer but rather the policy of the State Legislature, as declared in the GPTA. *Rafaeli*, 2020 WL 4037642, at *9. And, Defendants argue, because the denial of refunds was not a policy of Defendant County of Isabella or Defendant Pickens, they cannot be held liable for any federal claim under 42 U.S.C. §1983. Citing *Leatherman*, 507 U.S. at 166.

Defendants claim that this *Monell* defense was specifically raised by Pickens and Isabella County in their motion to dismiss filed in the Western District. *See* Western District ECF No. 72-1, PageID.612-615. A review of Judge Jonker's order reveals that he never explicitly addressed this defense in his opinion. (Western Dist. ECF No. 72-5, PageID.1195-1206), but this defense has since been rejected by other courts in this district and the Michigan Court of Appeals. *See Fox v. City of Saginaw*, 2021 WL 120855, at *6-7, 11 (E.D. Mich. 2021); *Proctor v. Saginaw Cnty. Bd. of Comm'rs*, 2022 WL 67248 at *13 (Mich. Ct. App. Jan. 6, 2022).

  2. *Plaintiff's Argument*

Plaintiff argues that *Rafaeli* does not constitute the binding rule for this case. Plaintiff acknowledges that the Michigan Supreme Court in *Rafaeli* decided that the "surplus proceeds" is all that is compensable under the Michigan Constitution. Plaintiff contends that this federal court is not precluded from awarding a different

sum when there is a Fifth Amendment taking and Michigan's remedy for the taking is legally inadequate under the Fifth Amendment.

Plaintiff maintains that the scope of damages regarding a taking in violation of the Fifth Amendment was not determined in *Rafaeli*. Plaintiff states that the *Rafaeli* plaintiff never presented an argument to suggest "that the tax foreclosure [sale] failed to obtain a fair price for the property," citing *Rafaeli*, 2020 Mich. LEXIS 1219, at *37 (Viviano, J., concurring), and the property at issue in that case appears to have been sold for its approximate fair market value.

Plaintiff argues that his property did not sell anywhere close to its fair market value (in fact, Plaintiff believes, the sale price was far less than half of the fair market value). Plaintiff asserts that the Fifth Amendment's Just Compensation Clause requires more than what the Michigan Supreme Court provided in *Rafaeli*, noting that federal courts are not constrained by state law. Citing *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under the color of state law, whether that action be executive, legislative, or judicial.").

Plaintiff contends that, under the Fifth Amendment, compensation consists of "the total value of the property when taken, plus interest from that time." *Knick*, 139 S.Ct. at 2170). Plaintiff states that "[t]otal value" means the "full monetary

equivalent" of the property taken. Citing *Almota Farmers Elevator & Whse Co. v. U.S.*, 409 U.S. 470, 473 (1973) (citation omitted) ("And 'just compensation' means the full monetary equivalent of the property taken. The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken."). Plaintiff claims that the owner of taken property must be put "in as good position pecuniarily as he would have been if his property had not been taken," *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 586 (1923), such that the taking government must pay "the full and perfect equivalent in money of the property taken." *United States v Miller*, 317 US 369, 373 (1943).[11] The *Almota* court wrote:

> The Fifth Amendment provides that private property shall not be taken for public use without 'just compensation.' 'And 'just compensation' means the full monetary equivalent of the property taken. The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken.' *United States v. Reynolds*, 397 U.S. 14, 16, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (footnotes omitted). *See also United States v. Miller*, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336. To determine such monetary equivalence, the Court early established the concept of 'market value': the owner is entitled to the fair market value of his property at the time of the taking. *New York v. Sage*, 239 U.S. 57, 61, 36 S.Ct. 25, 26, 60 L.Ed. 143. *See also United States v. Reynolds*, supra, 397 U.S., at

---

[11] Plaintiff argues that, even if the Court finds that *Rafaeli* controls this case, Plaintiff would still be entitled to surplus proceeds, plus interest, plus attorney fees and costs. *Knick*, 139 S. Ct. at 2170; 42 U.S.C. § 1988. The US Supreme Court has confirmed that "[t]he availability of any particular compensation remedy, such as an inverse condemnation claim under state law [like *Rafaeli*], cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force." *Knick*, 139 S. Ct. at 2171.

> 16, 90 S.Ct., at 805; *United States v. Miller, supra*, 317 U.S., at 374, 63 S.Ct., at 280. And this value is normally to be ascertained from 'what a willing buyer would pay in cash to a willing seller.' *Ibid. See United States v. Virginia Electric & Power Co.*, 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5 L.Ed.2d 838.

*Almota*, 409 U.S. 470, 473–74 (1973).

Plaintiff believes that the Sixth Circuit has rejected Defendants' argument that their voluntary and discretionary decision to designate the county treasurer to be and act as the FGU absolves their constitutional responsibility for the resulting unconstitutional taking of their citizens' equity. (M.C.L. § 211.78(3)-(6)).[22] Plaintiff maintains that, if a municipality voluntarily decides to utilize a state law that does not require a municipality to act (*e.g.,* M.C.L. § 211.78(3)-(6)), the decision of the municipality to do so becomes the adopted policy and custom of the municipality itself, sufficient to impose *Monell* liability. Citing *DePiero v. City of Macedonia*, 180 F.3d 770, 787 (6th Cir. 1999); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); *Cooper v. Dillon*, 403 F.3d 1208, 1222-1223 (11th Cir. 2005); *Vives v. City of New York*, 524 F.3d 346, 351 (2nd Cir. 2008). A local government and its officials are liable for constitutional violations when following and utilizing a discretionary-granting state statute, which is what Plaintiff contends the County of Isabella expressly chose here. Citing FGU List,

---

[22] Plaintiff also argues that the Supremacy Clause mandates that "public officials have an obligation to follow the Constitution even in the midst of a contrary directive." *Kennedy v. City of Cincinnati*, 595 F3d 327, 337 (CA 6, 2010); see also Const 1963, art XI, § 1. For that reason, Plaintiff argues that saying "the statute made me do it" is not a legal defense.

https://www.michigan.gov/documents/2005_V_2006_FGU_116385_7.pdf. Plaintiff states that choice to be the FGU pursuant to M.C.L. § 211.78(6) (and thereby destroying and retaining equity) was a deliberate, meaningful, voluntary policy choice of the county and became a "county" policy sufficient to meet *Monell*.

3. *Analysis*

For the following reasons, the Court concludes that Plaintiff is entitled only to the "surplus proceeds" realized from the tax-foreclosure sale of the Property, both under the Michigan Constitution – which the Michigan Supreme Court clearly expressed in *Rafaeli* -- **and** under the federal takings clause of the U.S. Constitution.

In *Rafaeli*, the Michigan Supreme Court held that defendant's failure to give the foreclosed property owners the surplus from the tax-foreclosure sale constituted an unconstitutional taking under the Michigan Constitution. *Rafaeli*, 505 Mich. at 437. The *Rafaeli* court did, however, ask the parties to brief a takings claim under the federal Constitution*, id*., and cited both the federal and state Constitutions before recognizing that the Michigan Constitution is generally more protective of property rights than the U.S. Constitution. *Id.* at 454 ("While we draw on authority discussing and interpreting both clauses, we must keep in mind that Michigan's Takings Clause has been interpreted to afford property owners greater

16

protection than its federal counterpart when it comes to the state's ability to take private property for a public use under the power of eminent domain."). *Id*. at 457-61, 476-77 (addressing federal cases and noting that the state takings clause had been interpreted as offering broader protection than the federal takings clause).

As Judge Jonker stated, "[t]he Takings Clause of the Fifth Amendment states that 'private property' [shall not] be taken for public use, without just compensation." Western District, ECF No. 119, PageID.1357 (quoting *Knick*, 139 S.Ct. at 2167). To establish federal taking claim, a plaintiff must show: (1) a cognizable property interest; and (2) that a taking occurred. The Fifth Amendment, however, does not create property rights, it enforces them. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) ("Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law."); *Leis v. Flynt*, 439 U.S. 438, 441 (1979); *Freed v. Thomas*, 2021 WL 942077, at *3 (E.D. Mich. Feb. 26, 2021). State, federal, and common law generally are the sources of the property interests that are protected. *See, e.g., Phillips*, 524 U.S. at 164; *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004).

As explained above, the Michigan Supreme Court expressly stated that there was a property right in the "surplus proceeds," but it "reject[ed] the premise

that just compensation requires that plaintiffs be rewarded the fair market value of their properties so as to be put in as good a position had their properties not been taken at all." *Rafaeli*, 505 Mich. at 483.

Plaintiff has not submitted any constitutional, statutory, precedential, or other authority to support his theory that he is entitled to the equity amount (fair market value less tax debt) of the tax-foreclosure sale. Judge Jonker's opinion does not do so, as he stated only that: "Under *Rafaeli* [the county] may not retain proceeds of the foreclosure sale exceeding Plaintiff's tax liability." Western District, ECF No. 119, PageID.1357. The Michigan Court of Appeals likewise has concluded that *Rafaeli* clarified that the property interest for Fifth Amendment purposes in cases such as this one is the "surplus proceeds." *Proctor*, 2022 WL 67248, at **1, 5.

Based on the conclusions of the other courts that "surplus proceeds" is the property interest held by former property owners such as Plaintiff, together with the absence of any authority cited by Plaintiff to support his equity argument, the Court concludes that: (a) there was an unconstitutional taking; and (b) Plaintiff is entitled to the surplus proceeds (tax-foreclosure sale price less the tax debt owed, which includes delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property) from tax-foreclosure sale of the Property. Plaintiff also is entitled to interest from the date of the foreclosure sale. *See Knick*,

139 S.Ct. at 2170; *Freed*, 2021 WL 942077, at *4; *Proctor*, 2022 WL 67248, at **9-13.

Accordingly, Plaintiff's motion for summary judgment is granted to the extent that he is entitled to the "surplus proceeds" of the tax-foreclosure sale of the Property, as well as interest from the date of the foreclosure sale, but denied to the extent that Plaintiff seeks excess equity from the tax-foreclosure sale (measured by the fair market value of the property less the tax debt owed, which includes delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property).

### B. Motion to Compel

Plaintiff has filed a lengthy Motion to Compel addressing many discovery requests it made. In light of the Court's rulings in this Order and another Order to be issued shortly after this Order, all claims asserted in Plaintiff's Second Amended Complaint will be resolved and judgment will be entered. Accordingly, the Court denies as moot Plaintiff's Motion to Compel.

### V. CONCLUSION

Accordingly, pursuant to and consistent with the findings above,

IT IS ORDERED that Plaintiff's Motion to Compel [ECF No. 7] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [ECF No. 8] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is DENIED AS MOOT with respect to Count III.

IT IS FURTHER ORDERED that Count IV is DISMISSED WITH PREJUDICE with respect to Pickens.

IT IS FURTHER ORDERED that, as to Isabella County, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART with respect to Counts IV and V.

IT IS FURTHER ORDERED that, under the United States Constitution and Michigan Constitution (Counts IV and V, respectively), Plaintiff is entitled to "surplus proceeds" from the tax-foreclosure sale (*i.e.*, the difference between the tax-foreclosure sale price and the tax debt that is owed) and is not entitled to the equity amount from the tax-closure sale (*i.e.*, the difference between the fair market value of the Property and the tax debt that is owed), such that Defendant County of Isabella shall pay Plaintiff the "surplus proceeds" amount of $73,767.07 ($76,008.00 - $2,241.93).

IT IS FURTHER ORDERED that Plaintiff is entitled to interest on $73,767.07, measured from the date of the tax-foreclosure sale.

IT IS ORDERED.

Date: September 29, 2022

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE