UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PUNG, as personal
representative of the Estate of
Timothy Scott Pung,

          Plaintiff,                 CASE NO. 20-13113
                                     HON. DENISE PAGE HOOD

v.

COUNTY OF ISABELLA, STEVEN W.
PICKENS, in his official and personal
capacity, and PATRICIA DePRIEST,
in her personal capacity,

          Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
THE MOTION FOR SUMMARY JUDGMENT FILED
BY DEFENDANTS ISABELLA COUNTY AND
STEVEN W. PICKENS [#18] AND GRANTING THE
MOTION FOR SUMMARY JUDGMENT FILED BY
DEFENDANT PATRICIA M. DePRIEST [#19]**

## I.    INTRODUCTION

Currently before the Court are: (1) a Motion for Summary Judgment with

respect to Counts I, II, and V, filed by Defendants County of Isabella ("Isabella

County") and Steven W. Pickens, the Isabella County treasurer ("Pickens"), ECF

No. 18; and (2) a Motion for Summary Judgment as to Counts I and II, filed by

Defendant Patricia M. DePriest, the assessor for Union Township ("DePriest"),

ECF No. 19.  Both Motions have been fully briefed, and a hearing via Zoom was

1

held on November 17, 2021.  For the reasons that follow, the Motion for Summary

Judgment filed by DePriest is granted, and the Motion for Summary Judgment

filed by Isabella County and Pickens is granted in part and denied in part.

## II.    STATEMENT OF FACTS

In an Order recently entered (the "Companion Order"), the Court set forth

detailed facts regarding this matter. *See* ECF No. 32.  The Court incorporates by

references all of those facts from the Companion Order into this Order and adds the

following facts that are relevant to the instant motion.

DePriest removed the State of Michigan "Principal Residence Exemption"

("PRE"), f/k/a the homestead exemption, associated with the Property when a new

affidavit of ownership was not filed with Union Township after Timothy Scott

Pung, the owner of the Property since 1994, died in 2004.[1]  Plaintiff's Second

Amended Complaint [ECF No. 2] asserts five claims,[2] all of which stem from the

---

[1] It is undisputed that neither Plaintiff nor anyone else has ever filed an affidavit of ownership since Timothy Scott Pung died.

[2] In ECF No. 2, the most recent version of the complaint filed, Plaintiff labels the document as "First Amended Complaint."  The parties, presumably because the complaint was previously amended while the case was pending in the Western District, both refer to that document as the "Second Amended Complaint," and the Court does so likewise in this Order.  In the Second Amended Complaint, Plaintiff alleges a conspiracy to violate due process by former defendant Peter M. Kopke, DePriest and Pickens (Count I); Equal Protection Violation – Class of One, against all Defendants (Count II); Eighth Amendment excessive fine claims against Isabella County and/or Pickens (Count III); Fifth/Fourteenth Amendment Taking against Isabella County and/or Pickens (Count IV); and Fifth/Fourteenth Amendment Taking Inverse Condemnation/Michigan Constitution against Isabella County (Count V).

determination by DePriest to deny the PRE for the Property in tax year 2012, Plaintiff's refusal to pay the difference between the tax amount if the PRE was applied and the amount that was assessed (without the PRE), and the actions taken by Pickens to cause the foreclosure of the Property because Plaintiff did not pay the entire amount of the assessed tax on the Property determined by DePriest. Plaintiff states, and Defendants have not challenged, that the value of the Property was at least $194,400 (double the State Equalized Value at the time of sale), a sum significantly in excess of the $76,008.00 for which the Property was sold at the foreclosure sale.

As stated by Judge Jonker in an order entered prior to transferring this case to the Eastern District of Michigan:

> Plaintiff is the personal representative of the estate of his brother, Timothy Scott Pung, one asset of which was a homestead in Isabella County. Timothy Pung died in 2004. His wife survived him and continued living in the house until her death in 2008, immediately after which his son, Marc Pung, lived continuously in the house. In 2013, Isabella County began a tax foreclosure process against the property over what it said was about $2,200 in unpaid real estate taxes [for tax year 2012 (the actual amount was $2,241.93)]. That process culminated in a final foreclosure judgment in June 2018. The ensuing foreclosure sale yielded about $76,000. Plaintiff says there were never actually any unpaid taxes due at all, and that the County therefore never had a lawful basis to foreclose. But even if the foreclosure itself was proper, Plaintiff says that at a minimum the County had an obligation to account to Plaintiff for the excess sale proceeds above the amount necessary to satisfy the unpaid tax bill. This has spawned two sets of currently pending claims.

FIRST SET OF CLAIMS

Plaintiff's first set of claims assert that he was unfairly targeted by the County Assessor (Defendant DePriest) and the County Treasurer (Defendant Pickens) because of an earlier round of tax litigation over the homestead exemption in which he prevailed. According to Plaintiff, this so angered defendants DePriest and Pickens that they conspired with a State ALJ (Defendant Kopke) to concoct a tax bill that unlawfully failed to apply the homestead exemption despite plaintiff's litigation win. To add insult to injury, Plaintiff says these defendants kept the inflated tax bill a secret from Plaintiff until after a critical deadline, lulling Plaintiff into believing he had paid the full tax properly assessed with credit for the homestead exemption.

Plaintiff says the scheme was retaliation for his success in the first round of homestead exemption litigation, a potential First Amendment violation; and contrary to the notice requirements built into Michigan law and inherent in due process, a potential violation of his Procedural Due Process rights. Plaintiff also says the fact pattern states a claim for a potential Class of One theory under the Equal Protection Clause as applied in *Willowbrook v. Olech*, 528 U.S. 562 (2000). According to Plaintiff, Defendants DePriest and Pickens were the main actors who hatched and executed the scheme together. But Plaintiff says this was "possibly" after a phone call with Defendant Kopke regarding how the homestead exemption works in Michigan, and so Plaintiff alleges Defendant Kopke, too, is potentially liable for the scheme as a co-conspirator.

* * * * *

The second set of claims pertained to takings claims under the U.S. and Michigan Constitutions. The Michigan Supreme Court recently held that a municipality in Michigan is obligated to account for all sale proceeds above the amount necessary to satisfy any unpaid tax obligation. *See Rafaeli LLC v. Oakland County*, 505 Mich. 429 (2020). On that basis, Judge Jonker concluded that:

Plaintiff is entitled to summary judgment as to liability on his Fifth and Fourteenth Amendment takings claims,[4] leaving only the question of damages for further litigation.[5]

_____

[4] This makes it unnecessary to rule on the Excessive Fines claim, which Plaintiff brought in the alternative.

[5] As noted above, the damages issues include without limitation the question of whether the County is accountable for only the excess proceeds of sale, or for the excess equity measured by the fair market value of the property. Also as noted above, the Excessive Fines claim is dismissed without prejudice because plaintiff expressly raised this as only an alternative theory.

Western District Case, ECF No. 119, PageID.1357-58.

In the Companion Order, the Court held that Plaintiff is entitled to summary judgment against Isabella County on Counts IV and V of the Second Amended Complaint (the takings claim under the United States Constitution and the inverse condemnation claim pursuant to the Michigan Constitution, respectively). The Court further held that Isabella County is to pay Plaintiff the "surplus proceeds" from the tax-foreclosure sale, in the amount of $73,767.07, plus interest from the date of the foreclosure sale. In the Companion Order, the Court denied as moot Plaintiff's motion for summary judgment with respect to Count III of the Second Amended Complaint (the claim for excessive fines against Isabella County and/or Pickens), as Judge Junker had previously dismissed Count III without prejudice, and dismissed Count IV as to Pickens. Based on the Companion Order, the Court denies as moot the motion for summary judgment filed by Isabella County with respect to Count V.

The claims the Court must consider in this Order are Plaintiff's conspiracy claim at Count I and equal protection violation (class of one) claim in Count II.

## III.  LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

### A.   Count I - Conspiracy to Violate Due Process (Pickens and DePriest)

Plaintiff claims that Defendants Pickens and/or Isabella County conspired with DePriest and former co-defendant Peter Kopke (then the Chief Clerk of the Michigan Tax Tribunal ("Kopke")) to illegally foreclose on the property without proper notice (due process) to Plaintiff.[3]   "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1978).

It is undisputed that Plaintiff challenged the foreclosure by Pickens (in Pickens' capacity as Isabella County Treasurer) in the Isabella County Circuit Court and then in the Michigan Court of Appeals. *See In Re Petition of Isabella County Treasurer*, No. 329858, 2017 WL1393854 (Mich. Ct. App. April 18, 2017)).   As a result, Plaintiff had a full and fair opportunity to argue every basis he thought relevant to challenge the foreclosure.   The Michigan Court of Appeals squarely addressed the issue of whether Plaintiff's constitutional due process rights

---

[3] Judge Jonker granted Kopke's motion to dismiss prior to transferring the case to this Court.

were violated when Pickens, on behalf of Isabella County, foreclosed on the Property. In its April 18, 2017 Opinion regarding the foreclosure proceedings, the Michigan Court of Appeals expressly held that Plaintiff "was not deprived of [his] constitutional right to due process." *In re Petition of Isabella County Treasurer*, No. 329858, 2017 WL 1393854, at *4 (Mich. Ct. App. 2017). *See* ECF No. 15-2, PageID.88-91.

The Court concludes that Plaintiff's claim of a due process violation by Pickens and/or Isabella County is collaterally estopped. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Michigan law, the doctrine of collateral estoppel precludes relitigation of an issue in a subsequent action between the same parties, where the prior proceeding culminated in a final judgment and the issue was (1) actually litigated; and (2) necessarily determined. *People v. Gates*, 434 Mich. 146, 154-55 (1990); *In Re Forfeiture of $1,159,420.00*, 194 Mich. App. 134, 145, 584 (1992). If a party is asserting collateral estoppel defensively, however, it is not necessary that such party was a party to the previously litigation. *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 691-92, 695 (2004).

In the state court foreclosure action in which the Michigan Court of Appeals held that there was no due process violation attributable to the foreclosure by Pickens, Plaintiff sued Pickens for actions taken by Pickens in his capacity as the Isabella County Treasurer (*i.e.*, he was acting as Isabella County). As Judge Jonker recognized, that meant Pickens was sued only in his "official capacity," not in his personal capacity as he is in Count I of this action.[4] Because "mutuality" is not required for a defensive assertion of collateral estoppel, however, the capacity in which Pickens was sued in the state court action is irrelevant for purposes of assessing whether collateral estoppel can be asserted against Plaintiff by Pickens – or by DePriest (who was not a party to the state court action). What is relevant for purposes of this matter is that the denial of due process alleged by Plaintiff in this case was actually litigated and decided against Plaintiff in the state court action. Accordingly, the Court finds that Plaintiff's denial of due process claim is

---

[4] Plaintiff acknowledges that any official capacity claims against Pickens should be dismissed as redundant because they are, by law, claims against Isabella County. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (a claim seeking damages against a public official in his "official capacity" represents "only another way of pleading an action against the entity of which the officer is an agent"); *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 695, 509 (6th Cir. 1996).

collaterally estopped and summary judgment is granted and Count I is dismissed as to all Defendants.[5] [6]

The Court does not need to address Plaintiff's assertion that Pickens had the option to "cancel" the foreclosure based on his "knowledge" that the PRE was not owed, although the Court would reject that assertion. Plaintiff relies on M.C.L. § 211.78k(9)(a), but that provision states only that a governmental unit "<u>may</u> cancel the foreclosure" if it discovers that "[t]he foreclosed property <u>was not subject to taxation</u> on the date of the assessment of the unpaid taxes for which the property was foreclosed." Plaintiff has not alleged, nor is there any evidence, that the Property "was not subject to taxation." Plaintiff's claim is only that the wrong amount of tax was calculated.[7]

---

[5] DePriest did not make a collateral estoppel argument regarding the conspiracy to violate due process claim. As the Michigan Court of Appeals held that Plaintiff's due process rights were not violated, however, there is no reason that holding would not operate to bar a claim against DePriest for the due process claim.

[6] The foregoing conclusion precludes any need to address Plaintiff's contentions that Defendants had an agreement to revoke in bad faith the PRE on the Property. Plaintiff claims bad faith existed because there allegedly was no lawful authority to revoke the PRE based on prior legal rulings by the Michigan Tax Tribunal and Michigan courts. Plaintiff appears to lack any evidence of such an "agreement," however, citing only: (a) the fact that there were rulings of which both DePriest and Pickens were aware that were contrary to the revocation of the PRE on the Property; and (b) Plaintiff's "belief" that DePriest revoked the PRE in concert with Pickens because Pickens had been "humiliat[ed] . . . before the Isabella County Circuit Court" in prior litigation. It is also noteworthy that Plaintiff admitted that he had no knowledge of any conspiratorial contacts between Pickens and DePriest.

[7] The Court also need not consider DePriest's empty "intra-corporate conspiracy" argument. DePriest contends that she and Pickens should be treated as being employed by the "same legal or collective entity," but it is undisputed that she was

**B.      Count II - Equal Protection Class-of-One Claim** (All Defendants)

To establish an equal protection class-of-one claim, a plaintiff must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 538 U.S. 562, 564 (2000).  The basis for a "class of one" equal protection claim is that a person cannot be treated differently from "similarly situated individuals," absent a "rational basis for such difference in treatment." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005). A plaintiff must show "that [he] and other individuals who were treated differently were similarly situated in all material respects." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 986-87 (6th Cir. 2012). Courts will not overturn government action unless the varying treatment of different groups or persons is "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011).

Plaintiff alleges that Defendants treated Plaintiff differently than they would have treated any other person in the same situation in Union Township.  The materially "similar circumstances" include that: (a) the person for whom there is an

---

employed by the Charter Township of Union and Pickens was employed by Isabella County.  There is no evidence that either DePriest or Pickens was acting as an agent of the other governmental entity.

affidavit of ownership to the property dies; (b); the property remains in the name of the estate (and has not passed to the beneficiaries or a new owner); and (c) no new affidavit of ownership is filed by the person(s) living at the property.  Plaintiff's Second Amended Complaint does not identify any similarly situated persons, and Plaintiff has admitted that he was not aware of any similar situations, nor was he aware of the circumstances of other Union Township property owners. ECF No. 18, Ex. M at 89.

The parties' arguments as to whether summary judgment is appropriate can be summarized as follows.  Plaintiff states that, although Defendants (especially DePriest) have asserted that Plaintiff was not treated differently than anyone else, Defendants have produced no evidence of other cases where persons/estates were denied a PRE when a new affidavit was not filed by the person(s) living at the property.  Plaintiff asserts that DePriest has been in her position for 15 years, so she should be able to produce evidence of how she treated other similar persons/estates the same.

Plaintiff argues that Defendants have not revoked the PRE from other properties under similar circumstances, as demonstrated by Defendants' failure to produce evidence that they treated other similarly situated persons the same as they treated Plaintiff.  Plaintiff states that no such evidence was produced: (1) in the

course of discovery; (2) when DePriest testified at her deposition; or (3) in Defendants' motions for summary judgment.

Plaintiff also argues that Defendants had no rational basis for the revocation of the PRE on the Property because multiple authorities had issued legal rulings that Plaintiff was entitled to claim the PRE on the Property.  Plaintiff cites the ALJ decision by the Tax Tribunal on March 7, 2012, which was binding.  In that decision, the ALJ held that Plaintiff was entitled to a PRE for the Property for tax years 2007, 2008, and 2009 pursuant to M.C.L. § 211.7cc because the Property remained in the Estate and "was owned and occupied as a principal residence by two of the beneficiaries of the Trust [Timothy Scott Pung's wife and son]." ECF No. 23, Ex. C at PageID.770.  As Plaintiff notes, none of those factors changed for tax year 2012 (nor, for that matter, does it appear they have changed to date, as the Estate remains open and Marc Pung continues to occupy the Property as his principal residence).

Plaintiff contends that Defendants' failure to produce any evidence by Defendants (when Defendants should have strong evidence that Defendants treated similarly situated persons the same (by revoking their PRE), if they did so) means that Defendants' assertions are "patently false." Citing *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 225-26 (1939).  For these reasons, Plaintiff argues that a genuine dispute of material fact remains as to whether Plaintiff has been

"intentionally treated differently from other similarly situated" without any rational basis, when he was denied a PRE credit to which he was entitled.

Defendants counter that Plaintiff has failed to produce any evidence that DePriest, Pickens, and/or Isabella County treated any similar persons/estates differently than Plaintiff was treated. DePriest relies on her testimony that it was common practice for her and her assistant to read through the obituaries on a daily basis and remove PREs that belonged to anyone who was recently deceased. ECF No. 19, Ex. H at 69.[8]

Defendants correctly maintain that it is Plaintiff's burden to produce evidence that Defendants did not revoke the PRE for any other property(ies) in instances where the person who signed the affidavit enabling the PRE died, the estate remained open, a beneficiary continued to occupy the property as a principal residence, and no new affidavit was filed. As Plaintiff has failed to do so, Defendants maintain that Plaintiff's "class-of-one" claim is woefully inadequate and fails. Citing *Stanislaw v. Thetford Township*, 515 F.App'x 501, 506 (6th Cir. 2013).

Pickens and Isabella County argue that Plaintiff also cannot demonstrate that their action was "irrational" because the Michigan Court of Appeals held that the

---

[8] No explanation is given why, however, that if that was the case, the PRE for the Property was not revoked back in 2004 (or 2005), after Timothy Scott Pung passed away, rather than being revoked for the first time in 2007.

foreclosure of the Property by Pickens was legally proper.  Isabella County further argues that Pickens' actions were not taken pursuant to a policy of Isabella County but instead by a policy dictated by Michigan statutory law.  For that reason, Defendants claim there was no Isabella County policy for which it can be found liable.

The Court finds that Plaintiff has not shown that he was treated, intentionally or otherwise, differently from others similarly situated, *Village of Willowbrook*, 538 U.S. at 564, as he has not even proffered other individuals similarly situated in all material respects who were treated differently than him. *Bench Billboard Co.*, 675 F.3d at 986-87.  Accordingly, the Court need not even reach the question of whether there was a rational basis for why he was treated differently from "similarly situated individuals." *Warren*, 411 F.3d at 710.

For the foregoing reasons, the Court grants the Defendants' motions for summary judgment with respect to Count II, Plaintiff's equal protection class-of-one claim.

**C.    Pickens**

Pickens argues that, even if summary judgment is not warranted on the merits, he is entitled to qualified immunity with respect to any individual capacity claim.  He argues that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Pickens states that, per Michigan law, it is the local assessor (DePriest) who determines the amount of taxes owed, M.C.L. § 211.19,  211.24, and who is certified to do so. M.C.L. § 41.61(1).  Pickens maintains that a township must attempt to collect the assessed amount, M.C.L. §§ 211.41, 211.42, and 211.44, and if the tax is not paid, the county treasurer is notified of the deficiency. M.C.L. §§ 211.55, 211.57.  The county treasurer is then responsible to commence foreclosure procedures to enforce the collection, M.C.L. § 211.78 *et seq*.  It is not the role or authority of the county treasurer to second-guess or dispute the assessor's determination. Pickens therefore contends that there was no clearly established law that would indicate to any reasonable county treasurer in Michigan that he or she could not follow the statutory mandate to foreclose property for which an assessor determined the property taxes were delinquent.

Plaintiff contends that material questions of fact remain as to whether equal protection and due process violations occurred, but as noted above, there was no due process violation in this case.  In the event that there is a question of fact that an equal protection violation occurred, Plaintiff asserts that Sixth Circuit precedent has clearly established that public officials cannot enter into conspiracies to deprive citizens of their constitutional rights. Citing *Bazzi*, 658 F.3d at 602; *Revis*,

489 F.3d at 290.  Plaintiff states that an official may not undertake intentional and arbitrary discrimination against one citizen that was different from the treatment the public at large received. Citing *Olech, supra*.

Although it can be said that there is a clearly established rule that an official cannot treat one citizen differently than the citizenry at large, Plaintiff has not proffered any evidence that Pickens treated Plaintiff differently than any other taxpayer about whom an assessor communicated to him that the taxpayer was delinquent and foreclosure was appropriate.  Nor is there any law, including M.C.L. § 211.78k(9)(a) (which Plaintiff erroneously relies upon), that required Pickens to question the determination of DePriest (the assessor) regarding taxes due on a parcel of property.  Accordingly, the Court finds that Pickens would be entitled to qualified immunity with respect to any due process or equal protection claim against him.

## V.     CONCLUSION

Accordingly, pursuant to and consistent with the findings above,

IT IS ORDERED that the Motion for Summary Judgment filed by Defendants Pickens and Isabella County [ECF No. 18] is GRANTED with respect to Counts I and II but DENIED AS MOOT with respect to Count V.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by DePriest (with respect to Counts I and II) [ECF No. 19] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's claims at Counts I and II are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's claim at Count III is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Judgment in favor of Plaintiff with respect to Counts IV and V will be entered against Isabella County in the amount of $73,767.07, plus interest from the date of the tax-foreclosure sale.

Judgment shall be entered separately.

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Date:  September 29, 2022