1           IN THE UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF MICHIGAN

3   MICHAEL PUNG                        )
                                        )
4       Plaintiff,                      )
                                        ) Case No. 20-13113
5       vs.                             )
                                        ) Bay City, Michigan
6   COUNTY OF ISABELLA, ET AL. ,        )
                                        ) May  20, 2025
7       Defendant.                      )
    _____    ) 10:14 a.m.

8

9                  TRANSCRIPT OF MOTION
          BEFORE THE HONORABLE PATRICIA T. MORRIS
10              UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES:

12  For the Plaintiff:   PHILIP L. ELLISON
                         Outside Legal Counsel PLC
13                       PO Box 107
                         Hemlock, MI

14

15  For the Defendant:   DOUGLAS CURLEW
                         Cummings McClorey Davis & Acho
16                       17436 College Parkway
                         Livonia, MI

17

18

19  Recorded by:       Kristen Castaneda

20  Transcribed by:    Carol M. Harrison, RMR, FCRR
                       1000 Washington Avenue
21                     Bay City, MI  48708

22

23

24      TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING
           TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS
25

P R O C E E D I N G S

1
2          (At 10:14 a.m., proceedings commenced.)

3          THE CLERK:  The Court calls the case of Pung versus

4   DePriest, et al.  Case No. 20-13113.

5          THE COURT:  Good morning.  Could I have the attorney

6   appearances, please?

7          MR. ELLISON:  Yes.  Good morning.  Philip Ellison

8   appearing on behalf of Michael Pung, who is the personal

9   representative of the Pung estate.

10          THE COURT:  Thank you, Mr. Ellison.

11          And for the defense?

12          MR. CURLEW:  Douglas Curlew on behalf of Steven

13   Pickens and the county of Isabella.

14          THE COURT:  Very well.  Thank you, Mr. Curlew.  And

15   we are here -- we have several things to discuss today, so we

16   can kind of get right.

17          MR. ELLISON:  Yeah.  Come on in, Mike.  This is Mike.

18   This is Michael Pung.  This is my client.

19          THE COURT:  All right.  Very well.  Good morning,

20   Mr. Pung.

21          MR. ELLISON:  You're welcome to come sit up here or

22   back there, wherever you're -- wherever you prefer.

23          MR. PUNG:  I can hear better up there.  I'm old.

24          THE COURT:  Sure.

25          MR. ELLISON:  Come on.

1          THE COURT:  That's fine by us.

2          MR. ELLISON:  Come on right up here then.

3          THE COURT:  So you haven't missed a thing, Mr. Pung.

4  We're just getting started here.  So we have, like I said,

5  several -- several things to discuss this morning, so we might

6  as well go -- go in order.

7          The first one would be the motion for attorney fees

8  and costs, and that is plaintiff's motion.  And, of course, I

9  have your -- have your briefs and so forth, but, Mr. Ellison,

10  if you'd like to talk about that one first, that'd be great.

11          MR. ELLISON:  Correct.  Thank you, Judge.  I'm going

12  to tie this one also with one other piece of the other motion,

13  too, just -- just so we're kind of orienting ourselves.

14          THE COURT:  Sure.

15          MR. ELLISON:  As the Court knows, the issue that's at

16  play is our -- my request for a motion for attorney's fees.

17  This is my renewed motion after the previous appeal.

18          THE COURT:  Right.

19          MR. ELLISON:  The Court denied the motion before

20  without prejudice.

21          THE COURT:  Exactly.

22          MR. ELLISON:  And we've renewed that in light of the

23  Sixth Circuit's affirmance of the -- of the court case on

24  appeal.  I don't think between the parties there's any dispute

25  that we constitute -- and I say "we" meaning the Pung

```
 1  plaintiff's side of this is the prevailing party in this case

 2  under the definition for 1988 attorney's fees purposes.

 3          THE COURT:  Well, let's ask just to make sure.  No

 4  argument there?

 5          MR. CURLEW:  No argument that he's prevailed; it's

 6  the degree of prevailing.

 7          THE COURT:  Okay.  Yes.  Got it.  Go ahead,

 8  Mr. Ellison.  Thank you.

 9          MR. ELLISON:  Yes.  And that was going to be the next

10  point that we dispute on is, is the issue involving the -- the

11  aspect of the entitlement to attorney's fees and what amount.

12          So I think the ultimate question is, is -- there is

13  an entitlement to an award; the question is, is in what amount?

14  And, of course, that's the Court's job is to determine what

15  that amount should be.

16          Now, the issue that's at play that has been the --

17  largely the defense raised by the defense is that I didn't win

18  everything on behalf of Mr. Pung.  And we will be the first to

19  acknowledge we have -- we have asserted a legal theory about

20  fair market value that was ultimately not accepted on both the

21  Fifth and Eighth Amendment grounds.

22          I will indicate to the Court we do intend to take

23  that case to the United States Supreme Court, and our actual

24  petition was due at the end of this month, and we have received

25  an order from the US Supreme Court extending our briefing
```

 1    deadline, our petition deadline, until the end of July, on

 2    that.  That just got granted late last week.

 3            However, in the meantime, I would like to still

 4    nevertheless push forward with this motion for attorney's fees.

 5    It's been many years of litigation on this.  And even if we're

 6    ultimately successful, we can come back and do a supplement if

 7    necessary then; but, if not, if we're unsuccessful, then no

 8    harm, no foul in that respect.

 9            The issue that's at play very succinctly is because

10    we were not 100 percent successful, the question becomes is

11    whether -- what amount of attorney's fees have to be reduced.

12    And the answer is, is that the Sixth Circuit and both the

13    United States Supreme Court has said you don't have to win on

14    everything to be entitled to full attorney's fees.  The

15    question is -- is -- were you -- were you successful in the

16    case?

17            And, ultimately, when we started this case -- and the

18    position that the -- that the Government has taken is that

19    Mr. Pung should have received nothing.  And I think that's a

20    point that's missed by the defense on this quite readily.

21            From the beginning, this hasn't been a case where

22    they acknowledged they had liability and simply would agree to

23    pay a certain amount and that the case was dragged out by one

24    side because of the amount of differences between their --

25    their position, even through the appeal, was Mr. Pung is

1   entitled to nothing.

2           So to say that -- that this has been hung up or that

3   they would have, quote unquote, settled this case -- which I

4   hotly dispute -- earlier in the case, is simply not a true

5   statement.  Under the prevailing law that's required at this

6   point in these cases is that if a person is ultimately

7   successful, they're entitled to a -- to be what's called fully

8   compensated for those fees.

9           Other than that, I mean, I think we're entitled to

10  what we've presented.  I've not seen a very specific objection

11  to, you know -- and forgive me.  The word I tend to use is

12  henpecking.  They -- I always get henpecking in any one of

13  these motions.  I've never had a motion in my years of doing

14  this type of work.  As the Court knows, this is the kind of

15  work that I do.  I've never had anybody that just says I agree

16  and will stipulate.  It's always -- there's always complaints

17  about everything.  So, ultimately, the Court needs to determine

18  use -- utilizing the lodestar method, the appropriate fee that

19  should be awarded in these circumstances.

20          The only other point that I would point out is that

21  there has been this notion, this allegation, that because I'm

22  from the hamlet of Hemlock, that somehow my fee should be

23  reduced because my office has been built and is located in a

24  jurisdiction in a place of my own choosing and it should be

25  reduced and -- for some reason where my office is at.  I find

1  that to be without merit.

2          I practice before this Court.  I practice before the

3  courts in Detroit, courts in Grand Rapids.  I go where the

4  court is.  Now, yes, I ultimately sit and type my briefs in

5  Hemlock, but my legal work --

6          THE COURT:  You're not really typing.

7          MR. ELLISON:  Well, believe it or not, I do a lot of

8  my own.  Believe it or not, I'm actually better at doing my own

9  typing than --

10         THE COURT:  Word processing.

11         MR. ELLISON:  Word processing -- oh, typing -- yes,

12  yes, not an actual typewriter, yes, yes.

13         THE COURT:  I'm just teasing you.

14         MR. ELLISON:  Yes.  So the funny story is I was the

15  last at Hemlock -- when they used to teach typing classes, we

16  were the last class that had the Daisywheel typewriters, and

17  after that it went to computers, and we were done after that.

18  So I was the last of the era, if you want to say on that -- in

19  that respect, but --

20         THE COURT:  You also have your new authority notice

21  which was ECF 80.

22         MR. ELLISON:  Yes, and I'll briefly address that as

23  well.  The Court also -- you know, so to the extent -- I guess

24  to finish my first thought would be is that to the extent that

25  there should be some sort of reduction because of where my

1  office is located, simply is not the basis.  It's not a fair

2  basis to reduce fees.

3         I have included the affidavit of E. Powell Miller,

4  who is a very prominent class action attorney who I've

5  partnered with in cases similar to these.  He has spoken highly

6  of my work being on par with leaders in the nation on types of

7  work.  And this idea that -- also that the defense has raised

8  is that I'm a Johnny come lately or following somebody else is

9  simply not true.  The actual lawyer in the *Rafaeli* -- in the

10 *Rafaeli* case themselves have offered an affidavit saying I'm a

11 lead attorney in this area of law.

12        So -- and I don't think it's a surprise to this

13 Court, given my experience with you with cases I've been before

14 you on bringing first impression civil rights cases.  I think

15 you had -- I know you had -- were part of the Bay City -- I

16 remember you were part of the -- at least the settlement part

17 of the Bay city litigation, parking ticket litigation and

18 things like that.  I do cutting-edge, new type of litigation

19 that cuts down barriers and brings relief to people for

20 constitutional violations, and this one is no exception.

21        I'll lastly address to the Court that I did submit

22 the supplemental brief of *Freed versus Thomas*, which is --

23 there are some slight, ever slight, differences between this

24 case and that one, but the base case is the same.  And when

25 Judge Friedman decided to reduce my attorney's fees by

1   effectively 65 percent on that, the Sixth Circuit reversed.

2   There is a -- they have provided, I think, with that

3   the clear mechanism for the Court to use lodestar plus

4   enhancing or decreasing factors based on that.  And I think the

5   Court would be, I think, well advised to follow that.  And I

6   think not only that, I think they're mandatory to follow.  That

7   is the last speak -- is the last word from the Sixth Circuit.

8   THE COURT:  You don't want me going rogue on you?

9   MR. ELLISON:  I don't want you going rogue on me

10  because I feel Judge Friedman went rogue on me -- and I -- and

11  I mean that respectfully, of course, but I think he went rogue

12  on me because part of the concern that he raised there was the

13  objection from -- it's brother counsel for Mr. Curlew who tried

14  to argue that, you know, because you didn't win everything,

15  there should be this vast discount, that there should be an

16  equal proportionality to this.

17  Not only has the proportionality rule been explicitly

18  rejected by the Supreme Court, *Freed* has reaffirmed that the

19  proportionality argument that the defense raises here has been

20  rejected and provided the framework for this Court to conduct

21  its analysis.

22  Now, it's my understanding -- and unless the Court

23  corrects me -- that as part of this type of motion, you are

24  doing a report and recommendation to the federal judge on the

25  case.  I know it's been referred to this Court.

1          THE COURT:  I don't think it's --

2          MR. ELLISON:  I guess I wanted to inquire about that

3    to you.

4          THE COURT:  Yeah, I'm not sure if it's considered

5    dispositive.  Good question.

6          MR. ELLISON:  Because normally -- the only reason I

7    ask the question is I've never actually had an actual case

8    referred to a magistrate before for decision on this, because

9    typically you have an appeal by right from an attorney's fees

10   to the Sixth Circuit, which would seem to suggest that it's a

11   dispositive issue.  But, if not, I mean, I guess I would just

12   flag that to the Court, because that's an answer I don't have

13   for you today.

14         THE COURT:  Yeah.  Well, that's a good question

15   because, you know, usually motions are -- I mean, the only ones

16   we think of as dispositive are like summary judgment.

17         MR. ELLISON:  Summary --

18         THE COURT:  Sometimes motions to amend if we're going

19   to deny it that -- you know, that ends up basically --

20         MR. ELLISON:  Yeah.  I was thinking --

21         THE COURT:  -- taking away a claim or something.

22         MR. ELLISON:  Well, like injunctions and things like

23   that nature, yeah.

24         THE COURT:  This one -- yeah, I don't know.  I mean,

25   I guess I was thinking I'd just do an order.

```
 1              MR. ELLISON:  Okay.  All right.

 2              THE COURT:  But you raise a good question.  I will

 3    look further into that before I do it.

 4              MR. ELLISON:  I leave it to the Court's decision on

 5    what it thinks is the appropriate -- I mean, the difficulty, of

 6    course, is Rule 7.1 that differentiates between a

 7    dispositive/non-dispositive set of orders.  The magistrate's

 8    act has a little bit different variety of flavor of that.

 9              THE COURT:  And you're not offending me because I

10    know -- I know who you are and what you're saying, but be

11    careful on that.  If you're in Detroit, don't say magistrate,

12    say magistrate judge.

13              MR. ELLISON:  Magistrate judges.  I've been corrected

14    a couple -- and I'm still guilty of it.  I'm still guilty of

15    it, yes.  But I just --

16              THE COURT:  Again, it's not offensive to me because I

17    know where you're coming from, but there are some colleagues of

18    mine that would --

19              MR. ELLISON:  Is it --

20              THE COURT:  It would just blow their minds --

21              MR. ELLISON:  I don't know if it's called a

22    magistrate --

23              THE COURT:  -- you know, they wouldn't be able to

24    think beyond that.

25              MR. ELLISON:  Okay.  All right.  Well, I'm glad that
```

1   you can think beyond that.  I appreciate that.

2            And, either way, I guess I just flag that as a

3   concern that I just -- that I when preparing last night was to

4   try -- I just don't have a very clear answer and there's no

5   real clear guidance on this.  And I guess I'd leave --

6   either -- I guess I would indicate to the Court --

7            THE COURT:  I guess for attorney's fees in Social

8   Security cases we do R&Rs, so maybe we should be doing an R&R

9   here.

10            MR. ELLISON:  I leave it to the Court's call on this,

11   and I would have no objection to the Court deciding how it

12   wishes to do that.

13            THE COURT:  Yeah, our order of reference is for an

14   R&R.

15            MR. ELLISON:  Okay.  Very good.  All right.

16            THE COURT:  That's what we'll do.

17            MR. ELLISON:  Unless the Court has any other

18   questions, I support -- I think we've properly supported an

19   appropriate fee award and would ask the Court to award as

20   requested.

21            THE COURT:  As a related matter, I thought you were

22   maybe going to get into you have also a renewed motion to

23   strike the offer of judgment.

24            MR. ELLISON:  I can -- I can jump into that if the

25   Court --

1          THE COURT:  I guess the reason why that's significant
2     is then when we're talking -- when we're talking about a
3     calculation of fees, we need to consider both, of course, the
4     number of hours and the hourly rate, and, as argued by the
5     defense, also need to consider when that -- if it covers the
6     full -- your full work in the case or whether it concludes at
7     the offer of judgment.  And I have a feeling that's probably
8     why you wanted to strike the offer of judgment; is that
9     correct?
10          MR. ELLISON:  Yeah.  So if the Court's okay with me
11     just jumping ahead to combine those two together --
12          THE COURT:  Sure.  And I think Mr. Curlew was okay
13     with that, too.
14          MR. ELLISON:  Yeah.  So the offer of judgment is an
15     interesting question right now, because offer of judgment only
16     deals with cost in the normal case, except in 1983, 1988, civil
17     rights fees, there is the penalty that if your ultimate
18     judgment, which you receive in this case, does not exceed the
19     offer of judgment, then you can be precluded from being awarded
20     cost from that point forward.  And costs, of course, in civil
21     rights litigation includes attorney's fees on that.
22          The problem that I see is that after you -- the offer
23     of judgment -- which I brought a copy with me in case the Court
24     needs it.  I assume -- it's Docket 44, I think it's, 2.
25          THE COURT:  I've got it, yeah.  Thank you.

1          MR. ELLISON:  Yes, yes, 44-2.  On that, the offer of

2    judgment itself was not just for the sum of the base, but it

3    was for the sum of the attorney's fees plus interest, plus

4    costs and attorney's fees in that case.

5          So, ultimately, this Court can't do an apples to

6    apples comparison between the offer of judgment and the final

7    outcome until it does basically all the attorney's fees, all of

8    the interest, all of the total judgment.  And as the Court --

9    and I'm going to flag the other issue, of course, is that I've

10   also asked for supplemental award of attorney's fees on the

11   basis that the County has not paid interest in that respect,

12   and there is case law to support that when you have not

13   fulfilled a judgment, and actions are required to fulfill an

14   unfulfilled judgment, that additional attorney's fees are

15   required in these types of circumstances.

16         So I guess what I would ask the Court to do, and the

17   way I am thinking of this structurally would be, is the Court

18   should ignore the offer of judgment rule in full and do its

19   calculation, do its normal full attorney's fees to come up with

20   an award of attorney's fees, then determine what the amount of

21   interest that's required.  And I'll have my arguments about

22   interest in just a second -- I'd like to kind of separate that

23   one from the case at hand -- come up with a final number, and

24   if that final number beats the offer of judgment, you don't

25   even need to deal with the offer of judgment because it becomes

1    moot at that point.

2           If you're going to then -- if it's -- if it's --

3    hasn't beaten at that point, then there's a couple of questions

4    that come into play about whether the -- whether that offer of

5    judgment has proper validity based on the way it was formed,

6    which I briefed to the Court, as well as whether or not the

7    offer of judgment is even relevant here.

8           Now, I've formulated it, and I'm kind of -- every

9    time I'm before you, I always feel a little bit funny because I

10   always formulate these motions as strikes or in some weird

11   fashion.  It's really to raise the issue about the

12   appropriateness of the -- I don't know if motion to strike is

13   the right way to do this, motions for limine.  I kind of used a

14   couple of different mechanisms.  It's simply to raise the issue

15   that the offer of judgment has no applicability here.

16          Whether the Court formally strikes the thing off the

17   docket or not --

18          THE COURT:  Right.

19          MR. ELLISON:  -- that is not really at play for me.

20   It's really -- and I guess I would defer to the Court if the

21   Court thinks that there isn't a more appropriate procedural

22   mechanism I should have used, if you would construe that motion

23   under that mechanism and deal with the issue -- the actual

24   substantive issue that underlies that.

25          THE COURT:  No problem.  And I do -- I figured --

1  that's why I mentioned it, because I figured that was the

2  purpose of this was to aid us in where the calculation should

3  begin or end.

4          And my last question for you on that, Mr. Ellison, is

5  just what do you do with the previous R&R that was adopted?

6          MR. ELLISON:  So the previous R&R that was adopted

7  was -- the question there was whether it was -- they were

8  offering that offer of judgment.

9          THE COURT:  Yeah, there were two issues.

10         MR. ELLISON:  Well, they made that offer of judgment

11 as proposed opposition to the previous motion for summary -- or

12 for, excuse me, for attorney's fees and costs.  The Court

13 denied striking it, but the Court ultimately denied the motion

14 for attorney's fees on the basis that it was moot at the time.

15         THE COURT:  Premature.

16         MR. ELLISON:  Premature, right, exactly.

17         THE COURT:  Yeah, yeah.

18         MR. ELLISON:  Okay.  Well, as a result, once the

19 Sixth Circuit issued its ruling, I've renewed my motion --

20         THE COURT:  Right, and here we are --

21         MR. ELLISON:  -- so I think it's fair.

22         THE COURT:  -- and that's fine.

23         MR. ELLISON:  And I think it's fair play once again.

24 So whether again -- whether it wants to call it a limine motion

25 to strike, whatever the point of it is, is that it's my

```
 1  position that it's an inappropriate offer of judgment.  And
 2  even if it is an appropriate offer of judgment, we -- the
 3  threshold has not been met to invoke that particular process
 4  going forward.
 5            THE COURT:  Right --
 6            MR. ELLISON:  Okay.
 7            THE COURT:  -- understood.  Thank you.
 8            MR. ELLISON:  Thank you.
 9            THE COURT:  And we did kind of -- we kind of hit all
10  of them really, Mr. Curlew, so if you want to hit all of them,
11  you're welcome to do so as well, in whatever order you deem
12  logical.
13            MR. CURLEW:  It might be a little jumbled because
14  I've just been taking notes as we go along.
15            THE COURT:  That's okay.
16            MR. CURLEW:  First, let's -- let's put a little
17  context into the case as far as the County's opposition from
18  the start.  As the Court knows, this case was transferred to
19  the Eastern District from the Western District.  When it began
20  in the Western District -- I have the original complaint here
21  from 2018 -- that was way back pre-*Rafaeli*.  And the Court
22  knows *Rafaeli* is a case that really threw open the whole idea
23  of the surplus proceeds compensation, so at the time the
24  complaint was originally filed, there was no law that said
25  there was any basis for recovery at all.
```

1           Michigan courts have affirmed the General Property

2   Tax Act as it was with no refunds.  So that was what the County

3   had to work with at the time.

4           THE COURT:  So you're -- you're just supporting the

5   idea that Mr. Ellison's argument was novel and predicted the

6   future --

7           MR. CURLEW:  Well, except his --

8           THE COURT:  -- where the case law would go?

9           MR. CURLEW:  Except his case wasn't the one that

10  prevailed.  It was *Rafaeli* that did, and he's been able to ride

11  the coattails of *Rafaeli* ever since.

12          THE COURT:  Well, nothing wrong with that.  I mean,

13  so --

14          MR. CURLEW:  No, certainly not.

15          THE COURT:  -- someone else's precedent got there

16  first.  That's okay.

17          MR. CURLEW:  In fact, one of the problems we'll both

18  admit in this case -- in fact, we have a number of cases like

19  this together -- is we're shooting a moving target --

20          THE COURT:  Right.

21          MR. CURLEW:  -- because new cases keep coming out --

22          THE COURT:  Right.

23          MR. CURLEW:  -- and we've submitted more supplemental

24  authorities on these cases.

25          THE COURT:  That's what keeps our job interesting.

```
1            MR. CURLEW:  Yeah.  So also the other thing to note
2   is that the original complaint in the Western District was a
3   Fourteenth Amendment due process claim.  It wasn't even really
4   a Fifth Amendment taking claim to start with.  That didn't come
5   till the first amended complaint, which was filed in 2019.
6            THE COURT:  But that's the active complaint then, I
7   mean, you know, so --
8            MR. CURLEW:  Yeah.
9            THE COURT:  -- yeah.
10           MR. CURLEW:  Then the operative complaint was
11  actually filed in 2019, the second amended complaint, No. 65
12  from the Western District.
13           THE COURT:  Right, yeah.
14           MR. CURLEW:  So the fact that the County has been
15  opposing is in large part due to the case law as it existed at
16  the time the opposition was put forward.
17           THE COURT:  Right.
18           MR. CURLEW:  In fact, it's interesting that counsel
19  brought up the whole opposition --
20           THE COURT:  You know, the award of attorney fees
21  doesn't --
22           MR. CURLEW:  Right.
23           THE COURT:  -- doesn't imply that the defense was
24  doing something wrong.
25           MR. CURLEW:  Right.  Oh, certainly, certainly not.
```

1  On the -- on the --

2          THE COURT:  So, you know, no one's saying that

3  either, I mean, so --

4          MR. CURLEW:  Right.  On the -- but that takes us to

5  the situation on the appeal, this appeal last time around.

6          THE COURT:  Actually in some way I think that

7  supports the plaintiff that the law is ever changing and maybe

8  they thought it was going to change again?

9          MR. CURLEW:  Oh, again, like I point out, there have

10  been a lot of changes in the law, but the changes really

11  haven't been in his cases in -- in the cases by plaintiff's

12  counsel.

13          THE COURT:  That's just kind of a crapshoot as to who

14  gets there -- you know, yeah.  Yeah, but, anyway, I mean, it

15  does in some ways, though, support the notion that it's not, as

16  you may be thinking of it as, frivolous to appeal the fair

17  market value thing when, hey, the law's changing.  Maybe it'll

18  work this time, you know.  You never know when you're going to

19  hit the right panel of judges or whatever.

20          MR. CURLEW:  You can say that about anything --

21          THE COURT:  Sure.

22          MR. CURLEW:  -- except I think the *Tyler* case, *Tyler*

23  *versus Hennepin County,* brought that to an end.  The *Tyler*

24  case, as we point out, pages 639 to 643, what's the recovery?

25  It is the surplus, the over plus, the excess of proceeds.

1          And *Tyler*, like *Hall*, which is the other case, and

2    Michigan's *Rafaeli* case, all look back to the Magna Carta.   In

3    fact, *Hall* went all the way back to *DeGlanville*, which is

4    before the Magna Carta.

5          THE COURT:  That's what we love about property.

6          MR. CURLEW:  So, I mean, it's pretty solid that it is

7    the surplus proceeds and no more, and to the extent we're still

8    dealing with arguing going farther than that, it's a unicorn

9    hunt and at a point becomes frivolous, and I think after *Tyler*

10   sort of became frivolous.

11         On that note, he -- there has been comment about the

12   County opposing any payment.  Obviously, that's changed over

13   time as the different things have come out.  One of the

14   County's arguments was *Monell*, and that is that because this

15   was a state statute that the County was enforcing, that had

16   been declared by the state courts, even the Michigan Court of

17   Appeals' *Rafaeli* opinion said that it was enforceable and you

18   didn't have to pay refunds.

19         Our position was that, well, this is really not a

20   county policy.  It's a state legislative policy and so how do

21   you get *Monell* liability against the County.  While Pung, while

22   this case was pending in the Sixth Circuit on appeal, the *Freed*

23   case came out and *Freed* said, no, there's no *Monell* defense.

24   And so our initial brief on this appeal abandoned the *Monell*

25   defense immediately.  We dropped what had been shown to be a

1   frivolous defense at that point after the *Freed* opinion.  It's

2   Pung that has not dropped what we consider to be a frivolous

3   claim for market value after the *Tyler* decision.

4          So I don't think the County can be accused of having

5   dragged out the litigation in the sense of its appeal, because

6   we dropped what our appeal was about.

7          THE COURT:  And I don't think anyone's accusing you

8   of that.

9          MR. CURLEW:  Oh, I think there has been some

10  accusation to that effect, particularly in the written

11  documents.

12         As far as the attorney fee, again, I point out in

13  the -- in the briefs, and I pointed out here that really the

14  degree of success -- it's not a matter of prevailing.  There's

15  no question that Pung has prevailed.  It's a question, though,

16  that in the *Hensley versus Eckerhart* case, the critical factor

17  is what's the degree to which you prevail?  What is the degree

18  of success?  And that's critical for determining what the

19  appropriate fee is.

20         THE COURT:  Would you agree, having noted from the,

21  you know, the new authority that *Freed* recognizes, I think is

22  not necessarily new, but is just at least further -- further

23  stated that the Court can consider that -- the Court can

24  consider the degree of success in fashioning a reasonable

25  attorney fee, but we're not mandated to do so, so you could

1  decide not to reduce the fee --

2          MR. CURLEW:  Sure, absolutely.

3          THE COURT:  -- by that.  It's a discretionary thing,

4  and you don't have to do the proportionality thing.

5          MR. CURLEW:  Right, right.

6          THE COURT:  I mean, it's --

7          MR. CURLEW:  Well, it's --

8          THE COURT:  -- allowed and it should be very well

9  explained.  That was the -- to me, that was the main message in

10 *Freed* was that the judge needed to explain what he was doing

11 and why --

12         MR. CURLEW:  That was --

13         THE COURT:  -- in a better way.

14         MR. CURLEW:  That was the point I was about to make.

15 The real gist of *Freed* isn't the substantive law regarding

16 attorney fees.  It was whatever attorney fee you grant, you've

17 got to explain how you did it, and there was no explanation.

18         THE COURT:  Yes, and it was just a 35 percent

19 reduction --

20         MR. CURLEW:  Right.

21         THE COURT:  -- not --

22         MR. CURLEW:  And this will go back to Judge -- Judge

23 Leitman, I suppose, now, and he will have to redo it with an

24 explanation.

25         THE COURT:  Oh, right, right.

1       MR. CURLEW:  But as far as proportionality, no, it

2  doesn't have to be strictly proportional, but it does have to

3  be gauged -- *Hensley versus Eckerhart* said the primary

4  consideration is that it has to be gauged by the degree of

5  success, and so there's --

6       THE COURT:  I think that's a little bit off just

7  because of the -- you know, I could do that.  It's within my

8  discretion to do that, but it's not mandated.  So I don't have

9  to do that.  I think that was one of the things that *Freed*, you

10  know, kind of reestablished or clarified, if you will.

11       MR. CURLEW:  Well, it is discretionary, but I would

12  say that --

13       THE COURT:  So it's not mandated.  So it doesn't have

14  to be proportional; it can be.

15       MR. CURLEW:  No, it doesn't have to be proportional.

16       THE COURT:  And it doesn't have to necessarily be

17  reduced.

18       MR. CURLEW:  Right, but it does have to be factored

19  by the degree of success, according to *Hensley*.  And what --

20  what they say when they say it's not proportional, what they

21  mean is just because you have a civil rights case and you may

22  get very minimal dollar result, that doesn't mean you can't get

23  a much -- a larger attorney fee than your dollar result.

24       THE COURT:  Correct, correct.

25       MR. CURLEW:  That is, you may have gotten a thousand

1  bucks --

2          THE COURT:  For your client.

3          MR. CURLEW:  -- but we can still get --

4          THE COURT:  Your attorney fees are going to be

5  50,000, that's fine, yes.

6          MR. CURLEW:  We can still get 10,000 or 100,000.

7          THE COURT:  Yes.

8          MR. CURLEW:  But the rules from *Hensley versus*

9  *Eckerhart* is that you still -- the key factor is the degree of

10 success --

11         THE COURT:  It's a factor, right.

12         MR. CURLEW:  -- as to whether you go from 10,000 to

13 100,000 on the attorney fee over the $1,000 award, you still --

14 whether it's 10 or 100, that depends on your degree of success.

15         THE COURT:  Yeah, that's a factor --

16         MR. CURLEW:  Right.

17         THE COURT:  -- not mandated.  Got it.

18         MR. CURLEW:  As far as the -- there was criticism of

19 the fact that we point out his office is in Hemlock.  Well,

20 that's because he was the one who cited the chart that uses

21 office location, and he was saying that his office was in

22 Wayne -- using the Wayne County numbers.  His office is in

23 Hemlock, and he was using a chart from that Michigan Economics

24 of Law survey.  I'm just using his own chart.

25         And there were -- there are, of course, all kinds of

1   different charts they have in that.  He attached them all to

2   his motion.  There's a chart based on office location.  There's

3   a chart based on the type of law you do.  There's the chart

4   based on the type of attorney you are.  I mean, there's lots of

5   different charts, but he had said -- he had submitted to the

6   Court the office location chart, and I pointed out that he was

7   using the wrong number off the office location chart.

8          But Your Honor has quite a number of different

9   factors you can look at as to what the fee ought to be.  And I

10  don't want to regurgitate what's in the brief where Your Honor

11  has already read it, but what I do want to emphasize, in

12  particular, is the idea that the County has left an unfulfilled

13  judgment.

14         As this Court well knows from having looked at it,

15  the interest was never declared.  What are we supposed to pay?

16  The interest rate is discretionary, just like the attorney fee

17  is.  We can't simply say, well, Mr. Ellison, you've cited to us

18  the Michigan post-judgment statute 600.6313.  Sure, we'll do

19  the calculation based on that.

20         We have a different rate.  The Sixth Circuit has used

21  different rates for the interest rate.  We point out that the

22  post-judgment federal statute can be used for prejudgment

23  interest.  So it's a discretionary decision with the Court, and

24  until the Court makes a ruling, we can't pay it.  We paid

25  everything we could pay.  We've actually paid a dollar extra

1 because the Sixth Circuit recognized the arithmetic had been
2 wrong.
3            So the idea that the County has not stepped up, the
4 idea that the County has made some decision that it won't
5 follow the Court's order, the idea that the County has dug in
6 its heels, no.  We paid every dime that this Court awarded in
7 total.  The only question is whether -- what the interest will
8 be, and when that is determined, it will be paid.
9            I have a -- I have had an email exchange with the
10 treasurer indicating that the payment can be made with, you
11 know, just like a couple weeks' or a few days' notice even once
12 the interest rate is declared.  So it's not like they won't pay
13 it, just like they paid the actual numbers of the judgment.  I
14 mean, once the numbers are declared, the County paid.
15            If there was going to be an appeal, we can appeal it
16 after the fact, but the payment will be made.  It's not like --
17 the County is not the evil entity that it is being painted as,
18 nor has its handling of this case been on that basis.  We've
19 been following the law at every step; granted, it's changed,
20 and as it has changed, the County's position has changed in
21 sync with what the courts have said the law should be in this
22 area.  The indignant, accusatory nature of the briefing has
23 been unnecessary, and I think that's where our -- some of our
24 primary dispute has been.
25            But, again, getting back to the attorney fee

1   specifically, as far as the offer of judgment that was made,

2   this Court already went through that analysis.  The merit case

3   still stands, and the merit case was the same thing we have

4   here, a multi-defendant offer to a single plaintiff, and that

5   case was declared by the Federal Supreme Court to be a valid

6   offer and to be admissible as evidence against the attorney

7   fees after the fact, that the attorney fees should not be

8   granted if the result was not as good as the judgment was that

9   was obtained; didn't matter the fact that it was three officers

10  making a joint offer to a single plaintiff.

11          That's what the Supreme Court declared the rule would

12  be as far as the offer of judgment.  This Court already

13  recognized it in the original recommendation.  That was not

14  objected to, and that was adopted by the Court.  That stands,

15  and under the *Davis versus Gallagher* case, there's no room for

16  going with new objections.

17          So it is admissible both as a matter of procedure.

18  It is admissible as a matter of substance.  There's no basis to

19  strike the offer of judgment, and the judgment that was granted

20  was less than -- or it was just less than half -- or, excuse

21  me, the judgment that was won was just over half of what the

22  offer of judgment would have provided.  So you can't say that

23  there was any particular success after the offer was rejected,

24  and, therefore, it cuts off attorney fees at the time that

25  offer was made back in June 2021.  I think it was 2021.  It's

1    in the -- it's in the pleading.

2              THE COURT:  Yeah.

3              MR. CURLEW:  Again, the only reason this case has

4    gone on -- the doubts were expressed, skepticism was expressed

5    as to whether the County would have settled, equal skepticism

6    could be expressed that the County didn't settle is that Pung

7    didn't settle.  Pung wants to go to the Supreme Court with his

8    fair market value.  It's a cinch.  He wasn't going to settle

9    for any offer the County would make for surplus proceeds, which

10   they can pay.  They have no legal authority by which to pay

11   more than surplus proceeds.

12             Michigan law absolutely says no.  Federal law under

13   *Freed* now says, no, you don't pay more than surplus proceeds.

14   That's it.  So we can't settle for more than surplus proceeds

15   really.  And we're not the ones that's dragged it out.  Had

16   there been willingness to settle for the surplus proceeds sum,

17   this case could have been settled, and likely would have been

18   settled, as many other cases have been.

19             What's prolonged the litigation for these last

20   several years?  What's continued the litigation after the offer

21   of judgment?  What has us still looking forward now to a

22   Supreme Court appeal is the desire to pursue a frivolous claim

23   for fair market value that the *Tyler* case, the *Freed* case, the

24   *Rafaeli* case have all already rejected looking back on laws to

25   the Magna Carta, and there's just no excuse for having to pay

1    continued attorney fees for that exercise.

2              THE COURT:  All right.  Thank you, Mr. Curlew.

3              Mr. Ellison, did you have any brief rebuttal?

4              MR. ELLISON:  Yes, yes.  I'd like to discuss the

5    interest part.  I held off on it.  I thought we were going to

6    do that separately, and Mr. Curlew combined them, which is

7    fine.  I have no objection to that, but I'd like a couple

8    comments.

9              THE COURT:  Yeah.  We were kind of all over the

10   place.  No problem.

11             MR. ELLISON:  Yeah, yeah.

12             THE COURT:  But they are connected.

13             MR. ELLISON:  If there's anything that we -- that

14   Doug Curlew and I can say is we can talk all day about civil

15   rights law to the -- to ad nauseam with each other here.  But

16   one thing I just want to make the record clear on is that

17   brother counsel, when he started, he was talking about the

18   first lawsuit versus the first amended complaint that was

19   filed.  And there's a reason why that takings claim wasn't

20   actually in the first lawsuit.  They hadn't -- they hadn't

21   seized the property yet.

22             When we started this case, it was a case against the

23   tax assessor for the tax issues, and while -- before they

24   answered the -- before there was an answer to the complaint,

25   the County foreclosed on the property and took the property at

1   that point.  That's when -- that's why it was added.  It wasn't

2   that we forgot about it or didn't think of it.  This was very

3   actively on my mind at that time as part of the *Freed*

4   litigation that I was doing parallel with this as well.

5           So that wasn't an accident.  That was actually

6   intentional.  I don't think it plays into your analysis at all,

7   but it is something I wanted the Court to be aware as to the

8   why because you've not had the long war of the Pung litigation.

9           Second of all, I would like to call the Court's

10  attention -- which you have it in the brief; it's particularly

11  in my reply brief about attorney's fees on page 3, which is

12  page ID 1618.  I'd call the Court's attention to the *Hescott*

13  case.  I think *Hescott* is extremely helpful for this Court to

14  answer the question about when somebody like myself is making

15  arguments and alternate grounds for a desired income, that that

16  alone is not a sufficient basis for reducing the fee.

17          And that's -- only argument we've really heard today

18  as the basis is Mr. Ellison's alternate arguments didn't win

19  the day.  *Hescott* says that is not good enough grounds for

20  reducing the fee.  And, in fact, *Hensley*, the very case he

21  cites for that, also says it is not necessarily significant

22  that the prevailing party did not receive all the relief

23  requested.

24          So I think that they have failed to establish -- I

25  shouldn't say -- maybe I should say it the other way around.

1    They have failed to offer good basis for a reduction rather

2    than the presumptive award of lodestar, which is what we're

3    asking for in this case.

4            Switching gears to the interest issue, I find the

5    interest -- the interest issue very interesting because I

6    think --

7            THE COURT:  No pun intended.

8            MR. ELLISON:  Interest is interesting because it is

9    not -- when we -- when judges hear interest, the first thing

10   they think of is math.  And, of course, then their -- sometimes

11   their brains shut off when they hear math, the word math.

12           THE COURT:  That's why we had to go to law school.

13           MR. ELLISON:  That's right.  That's the old joke,

14   right?  Interest is -- this isn't the typical interest that

15   applies in normal civil cases between private parties.  For

16   example, you know, party A and party B have a contract, there's

17   a lawsuit, the lawsuit goes on for three years or two years,

18   and there's prejudgment interest that ties to that.

19           Interest in this is constitutionally mandated in

20   these cases.  That's the *Seaboard* case.  That's the *Knick* case.

21   This is interest that goes from the time of the taking to the

22   time that the payment has been made in full.  Okay.  And our

23   position, at this point right now, payment has not been made in

24   full.

25           Now, the County is telling you at this point is,

1   well, we've paid what we've been ordered to pay.  Except that's

2   not true.  It's not true.  There is -- the judgment that was

3   rendered in this case says you have to pay X number of dollars

4   plus interest from the time of the take.

5        Now, if you look at -- as I have outlined in our

6   briefing, we argued that this is -- that there is no genuine

7   issue of fact, that a reasonable rate of interest was to borrow

8   from, not because of, borrow from the Michigan judgment

9   interest statute as a stand-in for an appropriate amount of

10  interest that's applicable here.

11       Interest in this instance is to compensate not for

12  the delay of fulfillment of a money judgment.  It's for the

13  taking of property that you didn't pay at the time that you

14  took.  And there's no dispute here anymore, they took.  They

15  took back -- and I don't have the -- I think 2019, I believe,

16  was the start of this, and they did not pay at the time of the

17  take.

18       And, again, I question -- I'm not saying evil intent,

19  okay.  I'm not -- I'm not -- I'm not saying that at all.  There

20  was a -- there was a dispute between the parties as to whether

21  this was a take or not.  I think *Lawton*, the original case,

22  precluded their arguments on this, but, nonetheless, they opted

23  to go through the litigation and decide not to promptly pay

24  that -- that I think the Court and the Constitution ultimately

25  required.  They took that risk.  They lost.  You've got to pay

1  that interest from that time going back.

2          Now, the question that's before you right now is, is

3  that what is that interest rate?  And they're asking you to

4  reopen -- they're effectively asking you to reopen the case and

5  come up with a new interest rate.  As I've outlined in the

6  briefing -- that's why I want to flag this, because I think

7  this is really, really important because the -- in the motion

8  for summary --

9          THE COURT:  What was the prior interest rate?

10         MR. ELLISON:  The interest rate that I asked --

11         THE COURT:  I mean, you're asking -- you know, you

12  said that they're asking you to reopen and come up with a new

13  interest rate.  What was the previous interest?

14         MR. ELLISON:  So the interest rate that I asked for

15  in my original motion for summary judgment was to borrow the

16  Michigan civil judgment rate as an appropriate compensation and

17  base amount for the nonpayment for the taking itself.  Some

18  courts use Moody's corporate index, corporate bond index.

19  Some --

20         THE COURT:  Right, but that was not ever placed in an

21  order or in a judgment.

22         MR. ELLISON:  It was, though.  That's the -- that's

23  what I'm trying to argue to you.

24         THE COURT:  I'm looking at the judgment.

25         MR. ELLISON:  Well, that's where I'm -- I want to

1  give the judgment the context in which it was entered, and this

2  is why --

3           THE COURT:  That's dangerous.  Judgments are

4  judgments.

5           MR. ELLISON:  Well, let me --

6           THE COURT:  I don't think we look beyond the four

7  corners of the judgment.

8           MR. ELLISON:  But I'm not asking you to --

9           THE COURT:  I think you are.

10          MR. ELLISON:  -- and I guess here's why.

11          THE COURT:  Okay.  Tell me why.

12          MR. ELLISON:  Here's why.  Here's why.  This is

13  what -- this is my -- this is my old freshman try here to

14  convince you, right?

15          THE COURT:  Sure.

16          MR. ELLISON:  When I moved -- if the Court goes and

17  pulls my motion for summary judgment, I asked the Court to

18  award takings money, either surplus proceeds or fair market

19  value.  And then I go on to ask the Court to award interest,

20  and I offered the rate of the Michigan judgment interest rate

21  as the basis for what interest should apply.

22          The County at that point -- I'm saying at that point

23  of the -- of that point of the posture of the case, the Court

24  was being asked to grant me the win on that issue.  And the

25  opposition from the County was nothing.  They offered no

opposition.  They offered no contrary evidence, no contrary

interest rate.  They offered nothing in opposition.  Judge Hood

granted my motion for summary judgment.  She granted the

interest that I requested in that summary disposition motion.

Now, why that's important is, is, yes, she didn't do

the math herself and come up with the ultimate number, but she

granted summary judgment on the interest rate that I

specifically asked for and was never opposed on.  And so my

argument to you is this is not the opportunity for the County

to come back in and say post-judgment, after a mandate's issue,

after there's been an appeal, to say pick a different interest

rate than what's already been established in the record

already.

So while I -- I think where we're at odds with each

other is --

THE COURT:  I understand your argument.

MR. ELLISON:  That's where I'm coming from on this.

And so what I'm asking this Court to do -- because I would even

go one step further -- and I'm -- this is more of the academic

in me, you know.  Being married to a professor and being an

academic is -- I'm not even sure you can reopen the issue on it

because of the mandate rule.  Because if there was concern

about the interest rate itself, to reopen that would be to set

aside the mandate that the Sixth Circuit issued.

Now, I hinted at this in my briefing.  I didn't go

1   full -- a full court press on the mandate issue, but it is a

2   real concern that I have is that if they are concerned that

3   this interest rate wasn't established clearly, or if it

4   wasn't -- or was using a rate that was inappropriate, it was

5   their obligation to raise it to the Sixth Circuit, not bring it

6   as a post-judgment do-over, which is what they're essentially,

7   I think, trying to have you do here.

8          Don't use the rate that was granted summary judgment

9   on, use a new rate after the -- after Judge Hood reviewed it,

10  after the Sixth Circuit's reviewed it, and after the mandate's

11  already been issued.  I don't think you have the authority to

12  be able to do that because it would run contrary to those prior

13  orders as well as the mandate.

14         That's my old college try, and I think that's -- I

15  think that's a strong basis, and I think that's why Judge Hood

16  didn't have to do the math, because it was unopposed by the

17  County that that was the math that was applicable in that

18  circumstance.

19         So as I've laid out, both with -- I work with

20  spreadsheets in my mind.  I use Excel spreadsheets.  I did

21  convert that in the record to a narrative form, so the Court

22  can follow step-by-step how that calculation comes out.  But

23  it's our basis -- it's our request today that until -- which

24  we're kind of coming up on another six-month window, but as it

25  stands right now, the amount of attorney's fees is -- and I --

1   now I just lost my paper on it -- but it was 25,000 -- forgive

2   me -- was $25,000 and some change on that.

3          Well, you have it in the record.  You have my

4   calculations.  It's 25,000.  So once you have that number -- I

5   guess where I finish out by saying is, is once you have the

6   determination as to what the interest is, you add that together

7   with the attorney's fees, you add that together with the

8   judgment.  I'm asking for post -- I'm asking for a

9   post-judgment additional supplemental attorney's fees because

10  of the nonpayment of interest, which that's also before you.

11         Once you have all those numbers in place, then you do

12  an apples to apples comparison to the offer of judgment, which

13  was a judgment amount plus interest plus attorney's fees plus

14  costs, and I think we're well beyond that.  So I think the

15  offer of judgment becomes a moot point; but, if not, then you

16  do your analysis as to the -- as to the balance of that.

17         THE COURT:  Would you agree, Mr. Ellison -- as long

18  as we are talking numbers -- that the -- and this is -- came

19  from the defense that they had you as having 220.25 hours and

20  then they, of course, proposed reducing that by the post offer

21  of judgment hours, which they had at 77.3.  Do you have any

22  problem with those numbers?

23         I mean, whether we use the number or not, I know

24  there's an argument about that, but -- but are the numbers

25  accurate as far as the number of hours, total hours?

1    MR. ELLISON:  I don't know.  And the only reason why

2  I say I don't -- and forgive me, I don't mean to be flippant

3  about it.  When I say I don't know is -- my primary argument --

4  just to frame it and then set it aside is, my primary argument,

5  you don't need to worry about those numbers, because the

6  ultimate judgment's going to exceed that, the ultimate number's

7  going to exceed that.

8    But assume it doesn't, I think, is what you're

9  asking.  Assume that the offer of judgment is applicable, the

10  offer of judgment penalty is applicable in this.

11    THE COURT:  Well, or let's say it's not.  Is the

12  total -- so the total -- they have the total hours as 220.25

13  total hours, not subtracting.  Then they -- then they would

14  seek to subtract --

15    MR. ELLISON:  Correct.

16    THE COURT:  -- the post offer of judgment hours.  But

17  is that -- is that number that they started with, is that a

18  correct number?

19    MR. ELLISON:  I would -- now you're asking me to do

20  math now.  Let me -- let me -- what I would --

21    THE COURT:  And I think it's based on --

22    MR. ELLISON:  What I would look to --

23    THE COURT:  I think Mr. Curlew's numbers were based

24  on your submission, so I just wanted to double check that

25  that's -- you know, we're -- it's always good to know what

1   we're arguing about and what we're not arguing about, right.

2          MR. ELLISON:  Right.  I have -- the table that I've

3   laid out is on page 19 of our motion, the motion for attorney's

4   fees.  So it's 172.2 hours for the -- through the judgment.

5   From the judgment to at the time -- it says to present, to the

6   time this motion was filed, was another 48 hours.  So I guess

7   if you add those together, you're at about 200 and -- about 220

8   like you're suggesting there.

9          THE COURT:  Okay.  Okay.

10          MR. ELLISON:  I think their reduction -- as I

11   understand their argument is, the reduction is if you apply the

12   offer of judgment, you don't do any hours after the offer of

13   judgment on that.

14          THE COURT:  Correct.  Correct.

15          MR. ELLISON:  Okay.  The only caveat I would say is

16   I'm not sure that applies to when there's a refusal.  And,

17   again, I don't mean refusal capital R refusal, but a refusal to

18   pay the full amount of the judgment that it requires additional

19   attorney's fees for enforcement --

20          THE COURT:  Okay.

21          MR. ELLISON:  -- that that would not be included if

22   the -- even if the offer of judgment rule applied in those

23   circumstances.

24          THE COURT:  Okay.

25          MR. ELLISON:  So what I have before you right now,

1    you don't have those numbers.  The -- if you want to call it

2    the post-judgment -- because I've asked for a briefing schedule

3    on that issue for enforcement time, if you want to think of it

4    almost as -- and I'm -- because, frankly, we're still -- we're

5    incurring them while we're sitting here even today on that as

6    well.

7           At some point I -- I get we gotta pull a plug on the

8    madness, but as of right now, we're still very much in contest

9    because if the judgment is what is -- if the interest is what

10   I'm saying it is, that's another 30 percent increase over the

11   base judgment itself in addition to interest, in addition to

12   cost on all of this.

13          THE COURT:  Okay.

14          MR. ELLISON:  Okay?

15          THE COURT:  Yeah.  Got it.  All right.  Well, thank

16   you very much.  So we -- like I said, we had the several

17   things.  Of course, the one filing was the notice of new

18   authority.  That's not anything for us to decide.  That's just

19   a notice.  And I -- I had actually seen it come through.  Yeah,

20   we get the Sixth Circuit opinions, you know, delivered to us

21   via email, so I had noticed it.

22          And it was funny because I had just mentioned it and

23   my case manager Kristin said, oh, is that -- because she had

24   just gotten your -- just gotten your notice, so we were all

25   about the same time noticing the same things.

1          MR. ELLISON:  Well, it was an interesting story,

2   because Judge Leitman, who I have on another case, his clerk

3   was listening that day on arguments for another case --

4          THE COURT:  Yeah, and ran into that one?

5          MR. ELLISON:  -- and he goes, the clerk says, oh,

6   Phil's on there talking -- Phil's there talking down there

7   about that case because he got reassigned the case but not

8   much -- you know, he's done very little with it since then --

9          THE COURT:  Right, right.

10          MR. ELLISON:  -- because it's been on appeal, but --

11          THE COURT:  So in going with the -- I'm going to take

12   the -- some things kind of out of order, but as far as the

13   motion to strike the offer of judgment, I think we're in a

14   situation where I view it as kind of law of the case sort of

15   thing that that was already -- already denied.  The R&R was

16   adopted and, you know, kind of similar to the argument you're

17   making about the interest but, you know, in the reverse.

18          In this one, I -- you know, I think that's a done --

19   a done deal.  I think the issue was already dealt with.  I

20   think the offer of judgment was not stricken.  The R&R was

21   adopted, and so I think it's still in.

22          As far as the motion to enforce the judgment, you

23   know, I'm looking at the judgment.  I think you have an

24   interesting argument about how -- even though the judgment just

25   says plus interest from the date of the tax foreclosure sale,

1 how that should be calculated.  And I know you've indicated,

2 you know, this is why she didn't do the math, because she

3 already established what the math is.  But you wouldn't have to

4 do math to at least say what the rate is.

5        So she doesn't say the 73,000 plus, plus interest at

6 a rate of X on -- from the date of the tax foreclosure sale.  I

7 just think the judgment has not answered that question for us,

8 and I think what should have been done -- and, again, you know,

9 procedurally things always come up and it's hard to know what

10 direction should you go in, but I think it would be better for

11 some sort of a motion for the Court to either clarify its

12 judgment, make a determination on interest rate, and you've got

13 good arguments as to why you think the rate should be the rate

14 that you had listed in your summary judgment motion.

15        But I don't think at this point in time it would be

16 proper for me to -- I mean, I think I would have to engage in a

17 lot of guesswork as to, well, if Judge Hood had this, let me

18 use my crystal ball.  I think what she would say is we'll use

19 that summary judgment motion interest rate, and then we'll do

20 the math from there, which I don't mind doing the math.  I'm

21 not good at it, but we have calculators.

22        But I think the way that the judgment is worded, and

23 perhaps that was an oversight -- but in order to enforce a

24 judgment, I guess it's got to be clear, just like anytime you

25 want to enforce a rule, the rule's got to be clear, and here

1  the judgment is just not clear to me.

2        I think we do have to look beyond the judgment and

3  make some arguments and some leaps to say what that interest

4  rate should be.  And even though you've set forth a good series

5  of, you know, logical steps to take in order to determine the

6  interest rate, I just don't think it's here in the judgment,

7  and so I'm going to recommend that that one be denied without

8  prejudice and then instead just, I guess, recommend that the

9  plaintiff seek -- seek a determination as to what that interest

10 rate should be, whether that's in the form for, you know,

11 motion to clarify the judgment or motion to amend the judgment,

12 something like that, but I think the judgment has to be clearer

13 before I can recommend that it be acted on.

14       Finally, as to the motion for attorney fees and

15 costs.  It's interesting that the -- that that chart that you

16 referred to and Mr. Curlew noted that the plaintiff's chart

17 talks about location of the office, because my immediate

18 thoughts were, well, it doesn't really matter where your office

19 is, what matters is where you're practicing.  And even that's a

20 little bit mysterious in this case because it -- Judge Hood, of

21 course, is in the Southern Division, but we're dealing with the

22 county of Isabella, which is generally in the Northern

23 Division.

24       The case number still has a one in front of it.

25 It's -- it's not a Southern Division case, but the judgment

 1   said Southern Division.  So it's -- it's one of those -- I

 2   think it's one of the cases, then, that it must have been sent

 3   to Judge Hood because we still have that administrative order

 4   in place where 30 percent of Judge Ludington's cases go to

 5   Southern Division judges; magistrate judge stays the same.

 6         So it's -- it's kind of up for grabs as to, you know,

 7   what -- where is the case exactly.  And a lot of the activity,

 8   as I think you both mentioned, you know, I didn't play a big

 9   part in this case.  I didn't have a lot of -- which in some

10   ways is a testimonial to good lawyering, that we didn't have a

11   whole bunch of discovery motions or things like that that

12   required you to be here, so most of the activity has been done

13   in front of Judge Hood, which would be Southern Division.

14         But I -- I notice now that, as Mr. Curlew pointed

15   out, that the chart actually talks about where the office is.

16   It still puzzles me a little bit.  I guess there's a part of me

17   that thinks maybe that -- even that rule is just based on the

18   notion that you're probably going to take cases in your area.

19   If your office is located in, you know, the Saginaw Bay, you're

20   probably going to do mostly cases in the Saginaw Bay.

21         And there's a huge, of course, difference between the

22   mid-Michigan area hourly rate and the Detroit hourly rate, but

23   I would -- I would note that with that same material on ECF No.

24   1479, on that page, when you look at civil rights litigation,

25   95th percentile puts you at 710.

1        So we have -- so here's the numbers that are bandied

2   about.  We've got 350 an hour for the mid-Michigan area, 400 an

3   hour for out of state Lower Peninsula, 575 for Detroit -- and,

4   again, that's -- those are the office charts.  Then the civil

5   rights litigation at 710.  I mean, it's kind of all over the

6   place really.

7        And so since I'm not sure that the office -- I mean,

8   it says office location, I think that the idea behind the

9   office location, again, is that probably if your office is

10  located in mid-Michigan, you're practicing in mid-Michigan,

11  you're usually not practicing in Detroit.  If you were

12  practicing in Detroit, you'd probably have an office in

13  Detroit, although that's -- as we know from this case, it's not

14  totally true.  Plaintiff's counsel travels various places

15  depending on where the case -- you know, where the case takes

16  him.

17       And so if we were to say, well, alright, the -- let's

18  say the location number, location of the office number, either

19  350 or 400 is the appropriate number, but then you've got 710

20  for civil rights cases, if you go by the topic rather than the

21  location.  And I think basically then that comes -- you know,

22  taking an average of those, that 575 an hour is kind of in the

23  middle of those, and that is what plaintiff has proposed as far

24  as an hourly rate.

25       So I -- because I think that that would be a pretty

1  fair number based on the average of the where your office is,

2  civil rights cases, comes to that point, and that rate just

3  happens to be the proper rate for Detroit cases, which is --

4  this case has largely been a Detroit case -- I think the 575 an

5  hour is not so out of line in this case.

6          But when it comes then to what is the number of hours

7  that we should be multiplying by, I'm going to recommend that

8  that number be the 220.25 hours, but less the post offer of

9  judgment hours, which were 77.3, which gives us 146.95 hours.

10  So if we do the math on that, and take that times 575 an hour,

11  that gives us attorney fees at 84,496.25, plus costs, and the

12  costs that were -- even though I know there was some discussion

13  in the -- in the briefing, maybe not here orally, that this,

14  you know, is just based on the plaintiff's attorney say-so, I

15  think we can trust that.  You're both officers of the court.  I

16  would trust either of your numbers.  And the costs before the

17  offer of judgment were a total of 937.78, and so if we do the

18  math there -- and I did use a calculator; I have many

19  alternates -- then the total is 85,434.03.

20          And so that's what I'm going to recommend.  Looking

21  at all the factors, understanding that through the case law, I

22  would have the ability to recommend that the number of hours be

23  reduced by some sort of calculation based on the case not being

24  fully successful.  But I think as discussed earlier, really

25  during the arguments, I think the case law says it's a factor

1  that can be considered.  It doesn't have to be.  I'm not

2  mandated to do that.

3           And I think in this case, everything was tied

4  together and I -- no one's arguing that the case wasn't

5  successful, that the plaintiff wasn't successful.  It's just a

6  question of to the extent of which he was successful.  And I

7  feel like in a situation like this that the -- I don't think

8  there would be a good way to do it, frankly, and I don't feel

9  that I have to do it.  I'm not mandated to reduce it under the

10 current case law.  And I just think in this case, it would not

11 make sense to try to get into the weeds as to reducing it based

12 on the, you know, not fully successful in trying to reduce it

13 in some way based on that.

14          So that's what -- I have to do this in an R&R, but

15 that's what my R&R is going to do -- it's going to recommend.

16 And then, of course, your -- both sides, of course, can take

17 your opportunities to file objections within 14 days.

18          So, again, just to go over that, the motion for order

19 in limine or to strike is going to be denied based on the

20 previous findings in the R&R that was adopted.

21          The motion to enforce the judgment is going to be

22 denied without prejudice, anticipating that the plaintiff will

23 move for a determination of the interest in whatever form that

24 is, whether it's a motion to clarify the judgment or a motion

25 to amend the judgment.

1           And then as far as the attorney fees are concerned,

2    I'm going to recommend that the motion for attorney fees and

3    costs be granted in part, that it be granted at the rate of 575

4    an hour, but only as to 146.95 hours, and costs at the amount

5    of $937.78, for a total of $85,434.03.

6           And so that's what the R&R will do.  I appreciate

7    your help in oral argument today, gentlemen, and --

8           MR. ELLISON:  Can I inquire on one point, Judge?  If

9    you can't --

10          THE COURT:  You can; it probably won't help you.

11          MR. ELLISON:  Well, I'm just curious why -- why was

12   the hours reduced?

13          THE COURT:  It was based on the offer of judgment.

14   So those hours are the number of hours that were taken off.

15   The total hours was for hours that were spent post offer of

16   judgment.  So, in other words, the offer of judgment has not

17   been stricken; it's in, and I find that you're not entitled to

18   hours after the offer of judgment because the -- because of the

19   case law on that.

20          MR. ELLISON:  Okay.

21          THE COURT:  All right.  Thanks.

22          MR. ELLISON:  Thank you.

23          (At 11:13 a.m., court recessed.)

24

25

1

2

3                                    *   *   *   *   *

4                              C E R T I F I C A T E

5        I certify that the foregoing is a correct transcript
         from the digital sound recording of the proceedings in
6        the above-entitled matter.

7

8

9                               

10     Date: 6-4-2025            Carol M. Harrison, RMR, FCRR
                                 Official Court Reporter
11                               United States District Court
                                 Eastern District of Michigan
12                               1000 Washington Avenue
                                 Bay City, MI  48708
13

14

15

16

17

18

19

20

21

22

23

24

25